## EMMA V. NEWBERY

*v.*

## MARY M. BARKALOW et al.

[Decided January 21st, 1909.]

1. A corporation authorized by its act of incorporation to purchase and sell land, and to require any grantee to make such improvements as might seem expedient, purchased land, laid out streets, and adopted a resolution fixing a building line. It then conveyed a tract subject to the restrictions in the act of incorporation, and bound the grantee and assigns not to violate the act of incorporation or regulations made by the corporation. The tract conveyed was subsequently divided into lots, and conveyed to different persons, subject to conditions and restrictions previously imposed by the corporation.—*Held*, that such persons were chargeable with notice of the building restrictions contained in the resolution of the corporation, though it appeared only in its complete form in the minute book of the corporation.

2. The words "at any time" in a deed by a corporation authorized to purchase and sell lands subject to restrictions, which recites that the conveyance is subject to the restrictions in the act of incorporation, and

that the grantee, his heirs, and assigns agree not to violate any of the provisions in the act of incorporation, "by-laws, rules or regulations made by the said" grantor "at any time" refer to the date of the violation, and not to the date of the adoption of the by-laws, rules or regulations.

3. To authorize one to insist on restrictive covenants in deeds, and to invoke the injunctive powers of the court to enforce them, the restrictive covenants must be clear and satisfactory.

4. A corporation authorized to purchase and sell lands, and to require any grantee to make such improvements as might seem expedient to secure a uniform development, purchased land, laid out streets and avenues through it, the avenues running at right angles to the streets, and being twenty feet wider than the streets. It adopted a resolution for a uniform building line "on the main avenues," and conveyed tracts subject to restrictions contained in rules of the corporation, which the grantee agreed not to violate.—*Held*, that the restrictive covenant applied not to the streets at all, but applied to each and all of the avenues; the word "main" in the quoted phrase being surplusage.

5. Where an owner of land laid it out into streets and blocks, and by restrictive covenants in the deeds fixed a building line. the fact that a purchaser violated the restriction by the construction of an open piazza which extended into the restricted area, but did not obstruct the view from adjacent property, did not prevent him from enforcing the restrictions against the adjacent owner; the purchaser's violation being immaterial.

6. Where an owner of land laid it out into streets and blocks, and by restrictive covenants in deeds to purchasers fixed a building line, the court, in a suit to restrain specific violations of the covenant, was limited to a consideration of the facts relating to the street on which the violations were.

7. An owner of land laid it out into streets and blocks, and by restrictions in deeds to purchasers fixed a building line. An owner of a lot on one street sought to restrain the adjacent owner from violating the building restrictions. Of the thirty-six houses on one side of the street nine were over the restrictive line from one inch to four and one-half inches. There was also an old house at the extreme westerly end of the street which had a closed-in veranda extending over the line a distance of over nine feet. Of the forty-three houses on the other side of the street, eighteen were over the line from two inches to a little over two feet. There was nothing to show that the original owner had consented to the violations.—*Held*, that the violations were too insignificant in extent and in number to justify the court in inferring a general abandonment of the building restriction, even if the original owner could abandon or release a restriction which it had made for the benefit of all its grantees.

*Mr. Aaron E. Johnston* and *Mr. Charles H. Ivins,* for the complainant.

*Mr. David Harvey* and *Mr. Alan H. Strong,* for the defendants.

Howell, V. C.

The Ocean Beach Association was incorporated on March 13th, 1873. *P. L. 1873 p. 1089.* It was authorized to purchase and sell lands, and was especially empowered to require any grantee from it to make and maintain such style and character of improvements on the lands conveyed or on the streets fronting thereon as might seem most expedient for securing a uniform system of development and improvement.

The corporation purchased a tract of land extending from the Atlantic ocean to Shark river, in Monmouth county, with the intent of promoting the seaside resort which is now known by the name of Belmar. It at once laid out streets and avenues through the property east of F street and filed maps thereof, the streets running north and south being designated by the letters of the alphabet, and the avenues running east and west, at right angles to the streets, being designated by numbers. The streets were laid out sixty feet wide and the avenues eighty feet wide. Before any lots were sold by the corporation, its board of directors on June 9th, 1873, passed the following resolution:

"*Resolved*, That it is highly important to maintain uniformity in the line of buildings on the main avenues of the Association, and for securing said object that no building be erected on said avenues nearer to the line of same than twenty feet."

This resolution was entered upon the minutes of the corporation and no public filing or other general notice was given of it. On March 27th, 1877, the corporation made a deed to Ellen T. H. Harvey for a plot of land containing about three and a quarter acres, including the lots now owned by the complainant and the defendant. This plot lay west of F street, and between that street and Shark river, and at the time of the conveyance had not been plotted into lots, nor had there been filed any map showing the lines of streets and avenues through it. It will be observed, however, that the deed refers to several streets and avenues by name; these were afterwards plotted and made coterminous with the streets and avenues, which had been previously laid out east of F street. This deed of conveyance is in the usual form of a warranty deed, but it was made "Subject, nevertheless, to the covenants, conditions and restrictions contained

in the aforesaid act entitled 'An act to incorporate the Ocean Beach Association.'" The deed also contained a covenant made by the grantee in the following words:

"And the said party of the second part, for herself, her heirs and assigns, does covenant and agree to and with the said The Ocean Beach Association, their successors and assigns, that the said party of the second part, her heirs and assigns, shall not sell or suffer to be sold on the said premises hereby conveyed any spirituous or intoxicating liquors, nor violate any of the provisions contained in said act of incorporation, by-laws, rules or regulations made by the said Association at any time."

The title to these two lots passed by several mesne conveyances to a corporation known as the Land and Loan Company, by deed dated January 23d, 1907. All the intervening deeds, with the exception of one made by an auditor in attachment, make reference to the covenants, conditions and restrictions contained in the deed from the Ocean Beach Association to Mrs. Harvey. On February 2d, 1907, the Land and Loan Company by its deed to Cyrus B. Honce made the first severance of the title to the lots in question. By this deed it conveyed to Honce lot No. 1963 on the corporation's map, which was on September 18th, 1907, conveyed by him to the complainant, Mrs. Newbery. The deed to Mr. Honce is made subject to certain conditions, covenants and restrictions theretofore imposed upon said land and premises by the Ocean Beach Association, and the deed from him to Mrs. Newbery is made subject to all the covenants, conditions and restrictions contained in the former deeds for the same premises. On June 1st, 1907, the Land and Loan Company conveyed to the defendant lot 1964, which adjoins the complainant's lot on the west. This deed contains the following at the end of the description: "Under and subject, nevertheless, to certain conditions, covenants and restrictions heretofore imposed upon said land and premises by said Ocean Beach Association."

The complainant and defendant therefore own adjoining lots on the association tract, both fronting on Tenth avenue and lying west of F street, the complainant's lot being the more easterly and the defendant's lot the more westerly of the two. On the complainant's lot is erected a dwelling-house, in which reside the complainant and her family; on the defendant's lot

is a livery stable, the main building of which extends within the limited area about three inches. The defendant has laid a foundation for an office, which extends about eleven feet within the restricted area, and is about to construct an office building thereon. The distance between the complainant's house and the defendant's livery stable is about six to eight feet. The complainant's bill is based upon the allegation that there was a general plan for the improvement of Tenth avenue by maintaining the front line of the houses twenty feet away from the street line, of which general plan the defendant had notice.

There was evidence tending to show that all the deeds of conveyance made by the Ocean Beach Association for lands covered by their maps contained the same covenant that appears in the deed from that corporation to Mrs. Harvey. And it likewise appears that that corporation did formulate and lay out a general plan for the uniform improvement of all the property which it owned at that point. Both complainant and defendant must be charged with notice of these facts for the reason that they are specifically referred to in both their deeds. Such was the determination of this court in the case of *Hayes* v. *Waverly and Passaic Railroad, 51 N. J. Eq. (6 Dick.) 345;* and my conclusion is that the lands of the complainant and the defendant were bound by the resolution of June 9th, 1873, although it only appears in its complete form in the minute book of the private corporation which owned the land. This must be the only conclusion that can be reached, because the first deed in this title refers to the by-laws, the rules and the regulations made by the grantor upon the first transfer of the title.

The phrase "at any time" contained in the covenant in the Harvey deed refers to the date of the violation and not to the date of the adoption of by-laws, rules or regulations.

The complainant having thus established the application of the restrictive covenant to the lands of the defendant, it next becomes necessary to inquire whether the covenant is of a character that can be enforced and whether the complainant is in a position to be entitled to insist upon it.

The first objection made by the defendant is that the covenant is uncertain. It must be conceded that restrictive covenants must

not be vague or uncertain, that the complainant's right to insist upon the covenant and to invoke the injunctive powers of the court must be clear and satisfactory. *Sutcliffe* v. *Eisele*, 62 *N. J. Eq.* (*17 Dick.*) *222.* The covenant applies the building line restriction to what it calls the "main avenues." Defendant insists that this description of the highways to which the covenant was intended to apply is illusory, vague and uncertain, because no one can tell from the context what is meant by the word "avenues" or by the words "main avenues." The first map of the Ocean Beach property appears to have been made on May 9th, 1873, and to have been filed in the office of the county clerk of Monmouth county on October 4th of that year. The map was consequently made before the passage of the restrictive resolution. The map appears upon inspection to have distinguished between the two classes of public highways laid out upon it, calling one class streets and the other class avenues. The avenues, being somewhat wider than the streets, must have been then considered to be the main public highways. At that time there were no buildings upon the property, and there were no physical marks from which it could be deduced that one avenue was more of a main avenue or that one street was more of a main street than any other avenue or street. The only thing the board of directors could have had before them was the map on which it plainly appeared that the avenues were the main highways because they were wider than those highways which were called streets. It is therefore quite apparent that the word "main" is surplusage and that the covenant was intended to apply not to the streets at all, but to apply to each and all of the avenues. The objection of invalidity on account of vagueness and uncertainty is therefore not tenable.

The right of the complainant to bring the suit is, in my opinion, very clear. She is within the authority of *DeGray* v. *Monmouth Beach Association, 50 N. J. Eq.* (*5 Dick.*) *329;* affirmed, *67 N. J. Eq.* (*1 Robb.*) *731;* and see the most recent declaration of the English chancery division on the subject in the opinion of Mr. Justice Parker, in *Elliston* v. *Reacher* (*1908*), *77 L. J. Ch. 617.*

One of the objections to her position as a complainant is that

she has violated the covenant herself and therefore ought not to be heard to complain of violations by others. It is true that the piazza in front of the complainant's house extends within the restricted area, but it is an open piazza and is no obstruction to the view from the defendant's property, and is within the ruling of Vice-Chancellor Emery in *Morrow* v. *Hasselman, infra.*

Although the Ocean Beach Association formulated a plan for building line restrictions which should cover all its property, yet when it comes to specific violations the consideration of the subject must be confined to the street on which the violations are. This was so held by Vice-Chancellor Emery in *Morrow* v. *Hasselman,* 69 *N. J. Eq.* (*3 Robb.*) 612, and applies with peculiar force to the case in hand. Therefore, taking into consideration Tenth avenue alone, we find that the street extends westerly from the Atlantic ocean to the Shark river, a distance of about two thousand feet; it is cut up into eight blocks, the property of the parties hereto being on the seventh block from the ocean.

Recurring to the particular statements about the houses, it appears that there were at the time of the hearing seventy-nine houses erected on Tenth avenue, of which thirty-six are on the south side and forty-three on the north side. Of the thirty-six on the south side nine appear to be over the restrictive line from one inch to four and a half inches. In addition thereto there is an old house at the extreme westerly end of Tenth avenue and near the Shark river which has a closed-in veranda that extends over the line a distance of nine feet two inches. Of the forty-three houses on the north side eighteen appear to be over the line, although the witness who speaks of them gives the distances of sixteen only. These encroach from two feet three and a half inches down to two inches, those extending over the line as much as a foot being wholly east of F street. It thus appears that of the total number of houses on the street (seventy-nine) fifty-two are erected in compliance with the terms of the resolution, and twenty-seven extend over the restricted line. Of the twenty-seven there are but six which are one foot or more over the line. These six all lie east of B street and are distant to the eastward of the complainant's lot nearly thirteen hundred feet; all the remainder extend from one inch to ten and a half inches over. T

do not think that this situation discloses an abandonment of, or a disposition to abandon, the line which was fixed by the resolution of 1873. There is no evidence whatever that the original grantor, the Ocean Beach Association, gave its consent or in any way actively promoted any of these violations, or that it tacitly assented thereto. It appears that several years ago, and probably not later than 1896, the association disposed of all its lands, and as a corporation has not had since that time any interest in the property, and indeed it is difficult to see how the association could abandon or release a covenant which it had entered into for the benefit of all its grantees. Neither do I think that mere acquiescence by the complainant in the violations above referred to would be any evidence of consent on her part. The violations are too insignificant in extent and in number to justify the court in inferring a general abandonment of the covenant. The fact that six owners saw fit to subject themselves to the liability of a lawsuit by violating the covenant certainly cannot be held to be a general abandonment of the contractual relation between the Ocean Beach Association and its various grantees. Acquiescence in a trivial breach of such a covenant does not conclude a complainant from relief in respect of a more important character. Mr. Justice Fry in *Richards* v. *Revitt,* 7 *Ch. Div. 224; 47 L. J. Ch. 472; German* v. *Chapman,* 7 *Ch. Div. 271; 47 L. J. Ch. 250; Woodbine Land and Improvement Co.* v. *Riener,* 72 *N. J. Eq.* (*2 Buch.*) *787.*

The case of *Barton* v. *Slifer, 72 N. J. Eq.* (*2 Buch.*) *812,* is applicable to the facts in this case. The situation there was very much the same as here. There the Ocean City Association became the owner of a tract of land which now comprises Ocean City, in Cape May county, and laid it out in streets and lots, and inserted in all their original deeds covenants restricting the construction of buildings, and it was held that a small number of violations of the restrictive covenant could not be held to be presumptive evidence of a general abandonment of the plan originally determined upon, and that where such a plan existed any purchaser had a right to enforce the covenant.

It was held in *Morrow* v. *Hasselman* that slight and immaterial violations of the restrictive covenant would not be consid-

ered unless they went to the extent of showing a general abandonment of the restrictions by the owners of the property along the line of the street. It is clear that the original grantor who first imposed the restrictions upon the property, and with whom the contractual relation originally existed concerning the house line, has done nothing which would indicate an intention upon its part to disregard or abandon the covenant. Nothing short of general acquiescence in the violation of the covenant would be sufficient, in my opinion, to raise the presumption of abandonment.

The decree will therefore be for the complainant.