EDWIN W. GOATER

*v.·*

WILLET C. ELY et al.

[Decided February 11th, 1912.]

1. Where a grantor retains a part of land out of which a grant is made and expressly restricts the enjoyment of the land conveyed in order to benefit that retained, and the restriction is reasonable and consonant with public policy, it will be enforced in equity against the grantee at the instance of the grantor.

2. Where defendant, in an action to enjoin his use of premises in alleged violation of a restriction in his deed, asserts that the complainant will not be damaged thereby, he must prove the assertion beyond the possibility of a doubt.

3. Restrictive covenants against the use of property are strictly construed against the person claiming the right to enforce them, and where the right to relief is doubtful it will be denied.

4. An owner of land conveyed a part by deed, retaining the rest; the deed providing that no dwelling-house should be erected upon the premises. The grantee built a structure thereon, on the first floor of which was a garage and a boiler house, and on the second floor bedrooms and a bathroom, occupied by the servants of a lessee.—*Held,* in an action to enjoin the use of the building as a dwelling-house or habitation, and to compel it to be torn down and removed, that the four walls and the roof of the structure constituted a "house," and that the interior arrangement determined that a portion of it was a "dwelling-house," and that complainant was entitled to enjoin the use of any part of the house as a dwelling-house, although not to compel its removal.

5. ·Where the grantee of land under a deed providing that no dwelling-house should be erected thereon violated such restriction by the erection of a building in the early summer of 1909, but the grantor did not know that any part of it was used for dwelling purposes until October, long after completion, when he at once consulted counsel, the fact that the bill was not filed until March, 1910, was not such laches as to preclude relief.

Final hearing on pleadings and proofs.

*Messrs. Doremus & Lecour,* for the complainant.

*Mr. David D. Zabriskie,* for the defendants.

GARRISON, V. C.

The complainant was the owner of a tract of land at Ridgewood, New Jersey. On the 24th of December, 1908, he conveyed a portion of this tract (retaining the balance thereof in his own ownership) to the defendant, Willet C. Ely, by a deed containing a restriction in the following words:

"There shall not be erected on said premises any blacksmith shop, carpenter shop, shop for the carrying on of any kind of trade or business, factory, slaughter-house, store, tenement-house, hotel or liquor saloon, and no trade or business shall be carried on or permitted on said premises, and nothing which shall be ordinarily classed as a nuisance shall be maintained thereon. No barn shall be erected upon said premises except within forty feet of the rear line thereof, and no dwelling-house shall be erected upon the premises above described."

Each party then, or shortly after, began the erection of a structure upon their contiguous lands. Goater began the erection of a dwelling-house, Ely began the erection of the building in dispute. The building in dispute, which was begun some time in the early spring of 1909 or late winter of 1908, was finished some time in the late spring or early summer of 1909, and, on the 1st day of May, 1909, was leased, together with a dwelling-house erected upon a lot belonging to Ely and still further north of the lot conveyed by Goater to Ely, to one Sanborn. The disputed building is situated more than forty feet from the rear line of the lot conveyed by Goater to Ely, and consists of a structure on the first floor of which is a place for automobiles, next to which is a boiler and equipment for the radiation of heat, and on the second floor there are three bedrooms and a bathroom: and it is in evidence that for a considerable time while Mr. Sanborn was occupying the residence contiguous thereto he had his servants sleep (or some of them) in these bedrooms in this disputed building.

The complainant testifies, and it is not disputed, that he did not observe or know until October of 1909 the interior construction of the disputed building, or the use to which it was being put, and that he thereupon consulted counsel in the person of Cornelius Doremus, who, for personal reasons, turned the case

over to Harlan Besson, who, on the 29th of March, 1910, filed the bill in this suit.

The prayer is that the defendant Ely may be compelled to tear down, remove and carry away the dwelling-house erected on the said premises, and be compelled to discontinue the use of the said building and the dwelling-house, pursuant to the covenants contained in the deed, and that the said Ely may be decreed to use and maintain the said premises subject to the restrictions and covenants contained in the said deed, and may be restrained and enjoined from using the building on the said premises as a dwelling-house or habitation, and for further and other relief.

There is practically no fact depending upon the credibility of witnesses, that, as I now recall it, is in dispute.

There does not appear to be any doubt, under the decisions, that this complainant is entitled to the aid of this court if he proves a violation of the restriction. I have had occasion to state the result of the examination of the cases, and can see no necessity of adding anything to what I said in the case of *Lignot* v. *Jaekle* (1906), 72 *N. J. Eq.* (2 *Buch.*) 233 (at p. 241), as follows:

"It is the settled law of this state that where a grantor retaining a portion of the land out of which the grant is made, enters into an express understanding with his grantee, which restricts the enjoyment of the portion of the land conveyed, in order to benefit the portion retained, and the restriction is reasonable and consonant with public policy, such restriction will be enforced in equity against the grantee at the instance of the grantor. *Hayes* v. *Waverly & P. R. Co.*, 51 *N. J. Eq.* 345 (at p. 348); *Cornish* v. *Weissman*, 56 *N. J. Eq.* 610 (at p. 613); *Roberts* v. *Scull*, 58 *N. J. Eq.* 396. And, if the defendant relies upon an allegation that the complainants will not be damaged by the defendant's deliberate disregard of the restriction, they must make it clear beyond the possibility of doubt that the complainants cannot be damaged. *Cornish* v. *Weissman, supra;* *Morrow* v. *Hasselman*, 69 *N. J. Eq.* (3 *Robb.*) 612."

I understand, from the latest decisions of the court of appeals upon this subject-matter, that courts of equity do not aid one to restrict another in the uses to which the latter may

lawfully put his property unless the right of the former to such aid is clear; that restrictive covenants are strictly construed against the person claiming the right to enforce them, and that such covenants must not be vague or uncertain. It is also settled that where the right of a complainant to relief by the enforcement of a restrictive covenant is doubtful, his right to such relief must be denied. A late case plainly stating the above doctrines is *Fortescue* v. *Carroll* (*Court of Errors and Appeals, 1910*), *76 N. J. Eq.* (*6 Buch.*) *583.*

Applying, therefore, the above well-settled principles to the case at bar, there are, as I see it, but two questions to be considered: *First,* was there a violation of the covenant? *Second,* was there laches attributable to the complainant because of which he will be denied relief?

Taking up the first question, we find that the only language of the covenant with which we are herein called to deal is as follows: "No dwelling-house shall be erected upon the premises."

Counsel upon each side have been most industrious, and in their full and satisfactory briefs have furnished a very great number of examples of the use of the word "dwelling" or "dwelling-house" by judges in their opinions, and by lexicographers and others in their writings. I do not find it useful to deal with these precedents or authorities in detail, because so much depends upon the connection in which the word was used. I think it indisputable that, running through any proper use of the word, there is always one controlling idea intended to be conveyed by it, and that is that a dwelling-house is a house intended for human habitation.

I am not embarrassed by a question which was mooted at the hearing because the facts in this case do not make the discussion of it relevant or its consideration material. That question was, What would be the effect if the defendant in this suit had "erected" a structure obviously not a dwelling and subsequently had used it as a dwelling? In my view it would be improper for me to express any views upon this question, as I cannot conceive that any facts in this case make that question relevant or material to the decision of this case.

It is undisputed in this case that what the defendant erected upon the restricted premises was a house, one part of which was a garage and boiler house and the other part of which was a dwelling-house. The four walls and the roof of any structure (properly called a house) undoubtedly constitute what it is proper to define as a "house." The interior arrangement within the four walls and under the roof determine whether the same is a "dwelling-house" or what kind of a "house" it is.

In the case at bar the defendant Ely erected a house, and by its interior arrangement constituted part of that house not a dwelling-house, and constituted part of it a dwelling-house. The restriction is that "no dwelling-house shall be erected on the premises." To the extent, therefore, that he erected a house to be dwelt in he violated the covenant, and to that extent the complainant is entitled to relief.

I need not cite authorities for the principle that apartment or flat houses are dwelling-houses, and perhaps it will aid to illustrate my meaning if I should suggest that a covenant in this language would be clearly violated if a man should erect a house the first and second floors of which were fitted up for stores or offices, and the floors above the second were fitted up for flats. The four walls and the roof, as above suggested, would constitute the house, and that part of it which was fitted up for dwelling purposes at the time of the erection of the house would constitute the erection of a house to be dwelt in, or, in other words, a dwelling-house. That is exactly the situation that I have to deal with in this suit, and my finding of fact is that in the erection of this house he constituted a portion of it a dwelling-house, and to that extent violated the covenant against erecting a dwelling-house on the premises; and to that extent must be required to conform to the restriction.

My present view is that the relief to which the complainant is entitled is to have that which makes this erection a dwelling-house removed, and, as above pointed out, that which makes it such is the interior arrangement thereof. But while its interior arrangement is the determining factor as to whether the house is or is not a dwelling-house, it is the fact that if the present arrangement of rooms, &c., should remain, and they be devoted to

some other purposes than dwelling, the complainant will have received all of the relief to which he is entitled, and the defendant will not have suffered any more detriment than the proper interpretation of the covenant, binding him, requires.

I therefore think that an injunction which shall prohibit the defendant from using or permitting the use of any part of this house as a dwelling-house will meet the ends of justice. This is exactly within one of the prayers of the complainant's bill, and certainly is the least detriment to which the defendant can be subjected if I have properly apprehended his responsibility under the covenant.

Without searching to see whether there are any other precedents for similar action, two immediately occur to my mind so nearly in point that they are useful to be cited. One is the case of *French* v. *Robb* (*Court of Errors and Appeals, 1901*), *67 N. J. Law (38 Vr.) 260,* in which, in an action of ejectment, the court of errors and appeals held that an electric light pole erected on the plaintiff's property was properly there so far as the municipality was using the same for its purposes, but to the·extent that the electric light company used it to carry wires for private lighting it was unwarranted, and the verdict was so moulded as to require the removal from the pole of the wires carrying the electricity for private lighting. And in the case of *Taylor* v. *Public Service Co.* (*Vice-Chancellor Garrison, 1909*), *75 N. J. Eq. (5 Buch.) 371; affirmed* (*Court of Errors and Appeals, 1910*), *78 N. J. Eq. (8 Buch.) 300,* somewhat similar relief was granted by injunction.

Applying these principles, as I have above attempted to do, I reach the result herein announced. I do not find the right or necessity, in giving the aid.to the complainant to which I find him entitled, to order the house to be taken down. I do find that, to the extent to which it violates the covenant, the defendant must be enjoined and required to conform to the covenant, and to cease the violation, and that such result can be attained by an injunction of the character I have suggested.

The decree will be settled on notice, and will carry costs in favor of the complainant.

The only other question as initially stated is whether or not the fact that this building was completed in the late spring or early summer of 1909, and this suit was not brought until March of 1910, is, under the circumstances of the case, such laches as will be held to bar the complainant from his rights. I do not think that any such finding would be proper.

I find, as a fact, that until October of 1909, long after the building was completed and interiorily fitted up, the complainant did not know and was not affected with knowledge that any portion of the erection was for dwelling purposes, or that any portion of the building thus erected was to be devoted to dwelling purposes. It seems that he almost immediately consulted counsel, and the fact that the bill was not filed until March of 1910 does not, in my view, under the circumstances, constitute his conduct such laches as disentitles him to relief.

In this class of cases, in addition to whatever else may determine the court's action, a very large, if not controlling, factor is the standing by with knowledge, or the ascription of knowledge, that the defendant is violating the covenant, and after money has been expended by the defendant, then complaining that what he has done shall be undone. *Trout* v. *Lucas* (*Vice-Chancellor Emery, 1896*), *54 N. J. Eq.* (*9 Dick.*) *361*, is an instance of the character just adverted to, and the following cases deal with the general subject of laches: *Tynan* v. *Warren* (*Vice-Chancellor Green, 1895*), *53 N. J. Eq.* (*8 Dick.*) *313; Daggers* v. *Van Dyck* (*Vice-Chancellor Van Fleet, 1883*), *37 N. J. Eq.* (*10 Stew.*) *130; Le Gendre* v. *Byrnes* (*Vice-Chancellor Van Fleet, 1888*), *44 N. J. Eq.* (*17 Stew.*) *372; Holzer* v. *Thomas* (*Chancellor Magie, 1905*), *69 N. J. Eq.* (*3 Robb.*) *515.*