RICHARD B. MEANEY et ux.

*v.*

FREDERICK B. STORK.

[Decided May 9th, 1912.]

1. One who seeks to enjoin the violation of a building restriction must act promptly upon being advised of that which he asserts does or will constitute the violation.

2. Where complainants and defendant owned adjoining lots acquired from a common source of title under a restrictive covenant providing that no building should be erected within ten feet of the street line, and where the complainants, observing that a building which was being erected by the defendant projected over the ten-foot line with its eaves and with bay windows for which sills had, been laid, notified the defendant that they would consider the bay windows a violation of the covenant, but made no mention of the eaves, they were not entitled to an injunction as to the eaves, especially where almost every other house on the street on lots encumbered with the same restriction projected over the ten-foot line; the defendant being warranted in concluding that the projection of the eaves was unobjectionable to the complainants.

3. Restrictive covenants are strictly construed against the person seeking to enforce them.

4. Restrictive covenants will not be enforced by injunction when they are vague or uncertain, or where the right to relief is doubtful.

5. Restrictive covenants, to be enforceable in equity, must be reasonable.

6. The meaning of a restrictive covenant must be ascertained not only from its language, but also from the circumstances of its creation and its obvious purpose.

7. A restrictive covenant, providing that no building should be erected upon the lot within ten feet of the street line, and that the ten-foot strip should be kept open and unencumbered, except that light, open fences, not more than six feet in height, might be built to enclose a yard, did not prohibit the projection of steps from the front of the house over upon the ten-foot strip.

———

Heard on bill and supplemental bill, answers, replication and proofs in open court.

*Messrs. Weller & Lichtenstein,* for the complainants.

*Mr. Frederick N. Eberhard,* for the defendant.

GARRISON, V. C.

This is a bill filed to enforce a building restriction. The lands in question lie in a place named Eldorado, at Weehawken, Hudson county, this state.

The complainants and the defendant are owners of adjacent lots at that place, claiming through a common source of title, the complainants' title having left the common grantor first.

The restriction in question reads as follows:

"That neither he nor they will erect or permit to be erected on any lot any building within ten feet of the line of the street, avenue or place upon which said lots front, but shall keep said strip of land open and unencumbered, except that light, open fences, not more than six feet in height, may be built to enclose said strip as a court-yard, if so desired."

The complainants' lots are unimproved. Upon the defendant's lots he has erected a house. The street or avenue in question is called Liberty place, and I am assuming, in favor of the complainants, that the restriction in question obtains throughout Liberty place. I am also assuming that there was a common scheme for building improvement with similar restrictions imposed upon the land by the common grantor, and that the same is enforceable by the complainants by reason of the circumstances and the principles of law applicable to the situation.

The proofs show that on Liberty place, to the west of the lots of the complainants, there are other houses, built since they acquired their title, and that in almost, if not every instance, some part of the ten feet back from the street line has projecting over it, or resting on it, eaves of a house, or a porch, or steps or porticos. To the east of the complainants' lots there is, I think, at the present time, the proofs show, only the house of the defendant; and the eaves of his house, as completed, project from the front of the house, which is ten feet from the street line, about three feet and eight inches, and the steps that lead up to the front door of his house occupy several feet of the ten-foot strip.

The object of the bill and the supplemental bill is to restrain the continuance of these two alleged violations of the above-quoted covenant.

It appears from the proof that the defendant planned a house with a bay window projecting from the front of it, and that when the male complainant observed this in the course of the building he consulted his counsel, who sent a notice to the defendant notifying the defendant that the erection of this bay window was a violation of the restriction, and if continued would result in the complainants applying for relief.

The defendant, after the receipt of this communication, contemplated moving his house farther back than it then was (it then being, as above stated, just a little over ten feet from the street line), so as to be able to erect the bay window and still be

at least ten feet from the street line. Subsequently, however, he changed his mind, and eliminated the bay window, and continued with the erection of the house.

Since I propose to concede, in behalf of the complainants, for the purposes of this case, all of the principles of law for which they contend, it does not seem to me to be necessary or proper to burden this opinion with citations of authority. I propose, for the purposes of this case, to consider it settled that there was a common building scheme applicable to the lands on Liberty place, and that among the restrictions was the one contained in the above-quoted covenant, and that the complainants were entitled to enforce that covenant against the defendant.

The defendant argued that the court should find that the complainants were not entitled to relief because of the facts concerning the other alleged violations of the same covenant on the same street. It is the fact, as above mentioned, that on this same street almost every other house had something projecting from it which hangs over the ten feet in question—that is, the ten feet between the front of the house and the street line—or has a porch or steps resting upon part of the ten feet. The answer of the complainants to this argument is that such projections or encroachments of the other houses on the street did not affect him, as they were all to the west of him; whereas, the view of the Hudson river and the boulevard from his lots was the desirable and valuable view, and the defendant's lots lie between the complainants' property and the Hudson river, and anything erected upon the defendant's lots which interfered with or obstructed the view was injurious.

The complainants, in respect to the law applicable to this situation, cited those cases which hold that slight and immaterial violations by others in the same neighborhood will not be held to deprive a complainant peculiarly injured by the violation he is attempting to restrain from being accorded the protection to which it is found he is entitled with respect to the injurious violation. Under all the circumstances, therefore, I am not content to find, as against the complainants, that their conduct with respect to the alleged violation by others of the same covenant deprives them of the right to enforce it as against the defendant. I take it to be perfectly settled in such cases that one who seeks the

aid of equity must act promptly upon being advised of that which he asserts is or will be a violation of the restriction; and, therefore, I am of opinion that even if the covenant should be construed as prohibiting the projection of the eaves of the defendant's house over the ten feet mentioned in the covenant, the complainant may not have accorded to him, in a court of equity, injunctive relief under the circumstances disclosed by the proofs in this suit. The bill in this case charges that

"when the cornice (and by this the complainants mean the eaves) was placed on said building, your orators noticed that the same was over the said building line * * *; that thereafter bay window frames were put up * * * and that on the 11th day of August, 1910, their said solicitor served upon the said (defendant) the notice."

The notice, as will be recalled, confined itself specifically to the bay window. After receiving this notice the defendant, as I have already stated, seriously contemplated digging a new cellar, or making a new foundation and moving his whole house back a certain distance, so as to be able to preserve the front of it with the bay window, and still not in any way encroach upon or project over the disputed ten feet; but subsequently determined to simply eliminate the bay window to which the complainants had objected, and completed his house in that way.

I am entirely clear that under these circumstances it would be unjust to the defendant for a court of equity by injunction to prevent the maintenance of the said cornice or eaves. It appears from the bill and proofs that when the defendant had so far progressed with his building as to show that he intended to place bay windows in the front and to have a cornice or eaves projecting from the said front some three feet and a half, the complainants observed this situation and communicated to the defendant their objections to the existing plan of the defendant, and warned him that the bay windows were a violation of the covenant. They did not warn him with respect to, nor in any way call his attention to, the cornice or eaves.

Under these circumstances, I think the defendant was entirely justified in determining that the complainants did not object to anything in the existing situation other than that which they

specifically pointed out and stated as their objection. And I think that the defendant was entirely justified then in acting upon that determination, and leaving the rest of the building as it was originally planned, eliminating the feature to which the complainants had objected.

Furthermore, the defendant, by reason of existing conditions, upon that street, was entirely justified in reaching the conclusion he did, because almost every other house on the street in some way or other projected over the ten feet in front of it; and when the complainants were advised by the physical situation of what the defendant contemplated doing, and only objected to the bay windows, he clearly, in my view, led the defendant to the conclusion that whatever other projection there was, was unobjectionable to the complainants.

With respect to the matter contained in the supplemental bill, what has just been said is not applicable, because at the time of the filing of the bill the steps leading up from the ground to the front entrance were not in place and were placed subsequent to the filing of the original bill, and became the subject-matter of the supplemental bill.

This leads us to a consideration of the language and meaning of the covenant. In this connection it should be recalled that courts of equity do not aid one to restrict another in the uses to which the latter may lawfully put his property unless the right of the former to such aid is clear; that restrictive covenants are strictly construed against the person claiming the right to enforce them, and that such covenants must not be vague or uncertain. Where the right of a complainant to relief by the enforcement of a restrictive covenant is doubtful, his right to such relief must be denied. For a late expression of these principles, see *Fortesque* v. *Carroll* (*Court of Errors and Appeals, 1910*), *76 N. J. Eq.* (*6 Buch.*) *583;* applied in *Goater* v. *Ely* (*Vice-Chancellor Garrison, 1912*), *82 Atl. Rep. 611.*

I take it as firmly settled that a restrictive covenant, to be enforceable in equity, must be reasonable, and that the meaning to be attributed to it must be ascertained not only by a consideration of its language, but also by a consideration of the circumstances existing at the time of the creation of the covenant and its

obvious purpose. It will be recalled that the language of the covenant with which we are dealing prohibits the erection

"on any lot of any building within ten feet of the line of the street * * * but shall keep said strip of land open and unencumbered, except that light, open fences, not more than six feet in height, may be built to enclose said strip as a court-yard, if so desired."

In the case of *Brigham* v. *Mulock* (*Vice-Chancellor Leaming, 1908*), *74 N. J. Eq. (4 Buch.) 290*, the court said (at *p. 289*) : "The covenants in question provided that no building shall be erected within twenty feet of the property line of any street * * * ;" and in that case (at *p. 290*) the court entertained grave doubts whether open porches and bay windows, not extending to the ground, were within the language of the covenant.

The complainant in this suit seeks to escape this construction of the covenant in question in this suit by referring to the subsequent language in the covenant in question with respect to keeping the said strip of land open and unencumbered.

"Open" in one sense unquestionably means *absolutely without obstruction;* and "unencumbered" may be properly used, in some connections, as meaning *absolutely without anything resting on or projecting over land.* But when this whole covenant is read together, I think its meaning is reasonably plain, and, further, that it is entirely plain that it cannot be given the broad construction contended for by the complainants. The obvious purpose of this covenant was to prevent the erection of a building within the ten feet. Every house was to have in front of it— that is, in front of its front line—ten feet of unbuilt-on property. It cannot be successfully argued that any such absurd result should be attributed to a construction of this covenant as to prevent that ten feet from having placed upon it anything. Surely walks could be built through it, and to that extent the land would not be unencumbered. Little copings along the side of the walks to protect flower beds bordering the walks would surely not be within any reasonable construction of this covenant. And yet, if broadly construed, the walk itself and the coping or projection along the side of it, put there for protection, would be an "encumbrance" in some use of that word, and probably would also

cause the land not to be "open"—that is, absolutely free of obstruction, within a broad and in some senses proper use of the word "open."

I am of the opinion, on the one hand, that if the front of the building was ten feet from the line of the street and then a covered porch projected from it on to the ten feet, that would be part of the erection of the building, and would violate the covenant. On the other hand, I am of opinion that it is within the meaning of this covenant to permit an approach by way of steps to rest on the said ten feet; and I do not think that, in the proper sense of this covenant, such steps cause the said strip of land to be unopen and encumbered—that is, violate the provisions of the covenant that the said strip of land should be open and unencumbered. In other words, I incline to the opinion that the obvious purpose of the covenant was to have in front of each house a strip of land ten feet wide across which the vision of the neighbors would be unobstructed, and that the prohibition was against the erection of anything upon or within the said ten feet which should prevent free observation across it. Read in this way, the restriction is entirely reasonable; the obvious purpose of it is served, and the owner of each lot is not deprived unreasonably of a perfectly proper use of his property. Read in the broad way that the complainants insist it should be read, giving the most extreme meaning to each word of which each word is capable, the said strip of land would have to be left absolutely unimproved in any way, because anything placed upon it which nature had not placed there would then "encumber" it, in the broadest sense of the word, and this is so entirely unreasonable that we discard it and search for the more reasonable construction.

In conclusion, I can only, by way of summarization, say that I cannot believe it proper to construe this covenant so as to prevent the building of walks across this strip, or the resting of steps upon a portion of this strip; and I am also inclined to think that the projection of the eaves from the roof of a house, or a "cornice," as the complainants call it, was not within a reasonable construction of the covenant. However, I do not decide that in this case, because I think the complainants are remediless in equity with respect to that, for the reasons previously pointed out.

Under the circumstances of this case, and the law which I find applicable thereto, I have determined that the bill should be dismissed; but since it was entirely proper for the complainants to obtain a judicial construction of this covenant, and there was nothing unreasonable in their bringing the defendant before the court for that purpose, I will exercise the discretion vested in the court with respect to costs and shall make the said dismissal without costs as against the complainants.