FREDERICK L. HOLMAN

*v.*

ELLIS PARKER et al.

[Decided July 20th, 1922.]

1. Restrictive building covenants should be construed strictly against the covenantee, and when vague or uncertain, they will not be enforced in equity.

2. The purchaser of land, which was subject to a covenant that no building other than a dwelling-house or cottage to be used solely as such shall be erected thereon, cannot build a row of four cottages for residential purposes thereon.

On bill for enforcement of restrictive building covenants submitted on the pleadings.

*Messrs. Carr & Carroll,* for the complainant.

*Mr. Joseph C. Haines,* for the defendant Bennett.

*Mr. Albert E. Burling,* for the defendant Parker.

LEAMING, V. C.

No material facts are here in dispute. The single question for determination is whether there can be said to be any substantial doubt touching the meaning of the restrictive building covenant which complainant seeks to enforce.

It is an established rule that courts of equity will not aid one in the enforcement of restrictive covenants of this nature unless his rights are clear; that such covenants are to be strictly construed against the person claiming the right to enforce them; that when vague or uncertain or the right to relief is doubtful, relief must be denied. *Fortescue* v. *Carroll, 76 N. J. Eq. 583; Goater* v. *Ely, 80 N. J. Eq. 40;*

*Meaney* v. *Stork, 80 N. J. Eq. 60; Ocean City Land Co.* v. *Weber, 83 N. J. Eq. 476; affirmed, 84 N. J. Eq. 505.*

It is admitted by defendants that on December 31st, 1919, defendant Parker conveyed to complainant a portion of land then owned by him, and that by an agreement between the same parties, a copy of which is annexed to the bill, the land retained by defendant Parker was restricted in its use in favor of complainant. Prior to that time the Parker land was subject to a restrictive building covenant in favor of complainant identical in all respects with the covenant then agreed upon between complainant and Parker, except the distance the restricted area extended from Gilmore street. The new covenant merely reduced the restricted area from sixty-five feet in width to fifty feet in width, complainant by the agreement waiving the benefit of the covenant as to the extra fifteen feet.

The restrictive covenant thus agreed upon was as follows:

"That no building other than a dwelling-house or cottage and to be used as such solely shall at any time hereafter be erected on any part of the land of the said Ellis Parker, extending from the southerly line of the land of the said Frederick L. Holman [complainant] southward to Chestnut street within fifty feet from the westerly line of Gilmore street."

Defendant Bennett is now in possession of the land so retained by Parker (except as to ten feet frontage thereof on Gilmore street) under a contract of purchase, and proposes to build on the restricted area a row of four cottages for residence purposes.

The defendants are clearly bound by the covenant above quoted. Their defence is that the covenant cannot properly be understood as restricting the number of buildings on the restricted area, but should be understood as restricting the class of buildings which are privileged to be there erected— that is, forbidding the erection of any building except those of the defined type.

The difficulty encountered in accepting the view last stated is that the plain language of the covenant is to the contrary. The covenantor has in exact language engaged to erect no building other than a dwelling-house or cottage on the restricted territory. If the mutual intent was to engage to erect no buildings other than dwelling-houses and cottages on the restricted territory, the remedy should be reformation, since the clear and unmistakable meaning of the terms of the covenant are to the contrary.

The land retained by Parker at the time he conveyed to complainant was not in area more than could appropriately be devoted to a single residence property. It was at that time but one hundred and sixty feet in frontage on Gilmore street. The same may be said of the similar covenant of Parker's predecessor in title. His frontage at the time he executed his covenant to complainant was but one hundred and eighty-five feet. Obviously, the mere assumed possibility that the amount of frontage retained may have been more than the covenantor would have devoted to the use of one residence building cannot justify a doubt as to the meaning of language that is clear, definite and certain.

The recognized rule requiring a high degree of certainty touching a complainant's right to relief in a case of this nature has impelled me to earnestly search for some circumstance that could suggest a reasonable doubt as to the meaning of the covenant, and I have been unable to find any circumstance of that nature.

I will advise the restraint sought.