The bill in this cause seeks to enjoin the use of certain lots of land located at Lake Avenue (now known as Ocean Avenue) and Edgemont Drive, Loch Arbour, Monmouth County, New Jersey, by the defendant for the construction of a three-story garden apartment house for 59 families, on the ground that such use would be violative of the general covenants and restrictions contained in deeds of record and as imposed by the original developers of the tract of land of which these lots are part and are affected thereby. There was formerly erected on the lots in question a hotel which burned down some years ago.
The premises in question comprises lots Nos. 9 to 14, inclusive, on map entitled, "Loch Arbour, Ocean Township, Monmouth County, New Jersey, belonging to R. Ten Broeck Stout and Samuel Johnson, surveyed May, 1883, by Herman Lehlbach, Surveyor." This map was filed in the Monmouth County clerk's office September 4th, 1885.
At the final hearing of this cause, counsel for the complainants and the defendant stipulated or agreed to a stipulation which, in substance (and numbered for convenience), is as follows:
1. That all the facts relating to the restrictive covenants and to the development, as set forth in La Fetra v. Beveridge,124 N.J. Eq. 24, are adopted as the facts of this case.
2. That the defendant proposes to erect on the lots mentioned an apartment house for 59 families, and that the cost thereof will exceed the total minimum cost required by the restrictive covenants for buildings on the six lots in question.
3. That a six-family apartment house known as "Edgemont Drive Apartments" has been erected on a lot forming part of the development and has been in existence for more than twenty years. *Page 378 
4. That the varying restrictions, imposed by the developers or common grantor, and classified in La Fetra v. Beveridge,supra, as "A," "B," and "C" are as follows:
 "Restriction `A'
"The said party of the second part for herself, her heirs, executors, administrators and assigns, convenants that she and they shall never use said premises or cause the same to be used for the sale of cider, beer or any intoxicating liquors whatever, or for any business purpose whatever, other than the entertainment of guests, or for any manufacturing purpose whatever, and also that no hog pen shall ever be erected thereon. And also that no livery or public stables shall ever be erected thereon without the written consent of two-thirds of the lot owners of Loch Arbour. And also that no house, cottage, or other building shall ever be erected thereon nearer the line of either or any of the avenues than twenty-five feet. And also that no house or cottage shall ever be erected on either or any of said lots that shall cost less than $3,000. And also that no privy vault, cesspool or water closet shall ever be erected thereon except it be built of brick and cement so as to be perfectly water-tight.
 "Restriction `B'
"And the said party of the second part for herself, and her heirs and assigns doth hereby covenant to and with the said party of the first part, their heirs, executors and administrators that neither the said party of the second part, nor her heirs or assigns shall or will at any time hereafter erect any house or cottage or other building on either of said lots within twenty feet of the line of said avenue and will not erect or permit upon any part of either of said lots any outbuilding or stable within eighty feet of the front of either of said lots and will not erect or permit upon either of the said lots any dwelling house or cottage that shall cost less than $2,000 and will not erect or permit upon any part of either of said lots any hog pen; and also that said premises or any part thereof shall never be used for any business purpose whatever other than hotel business where there are actual accommodations for at least two hundred guests and also that no fence shall ever be erected on either of said lots within fifty feet of the line of ____ Ave. higher than four feet.
 "Restriction `C'
"And the said party of the second part, for himself, his heirs and assigns does hereby covenant to and with the said parties of the first part, their heirs, executors and administrators that neither the said party of the second part nor his heirs or assigns shall or will at any time hereafter erect any house or cottage or other building on said lots within twenty-five feet of the line of said Edgemont avenue and will not erect or permit upon any part of said lots any outbuilding or stable within eighty feet of the front of said lots and will not erect or permit upon said lots any dwelling house or cottage that shall cost less than $3,500 and will not erect or permit upon any part of said lots any hog pen; and also that said premises or any part thereof shall never be used for any business purpose whatever *Page 379 
other than hotel business where there are actual accommodations for at least two hundred guests."
5. That lots Nos. 9, 10, 11 and 12 are covered by Restriction "C;" lot No. 13 is covered by Restriction "B;" and that lot No. 14 is covered by Restriction "A," with some slight variation which will not affect the controversy in this matter.
6. That the original plans and specifications of the proposed apartment house, as prepared by Frank Grad Sons, the architects, and dated April 26th, 1946, shall, after the examination thereof by the complainants and by agreement of counsel, be admitted in evidence without the examination of the architects who prepared them.
The contention of the complainants is that the neighborhood scheme of a "distinctive residential community" was established by the original developers; that the erection and operation of the apartment house would violate the provisions in each of the classified restrictions against the use of said premises "for any business purpose whatever," and that an apartment house is a "business."
And the only other question involved relates to the "setback" provisions in the restrictions as to the location of the buildings. The defendant, however, claims that it will strictly observe this requirement and also comply with the zoning ordinances of the Township of Ocean as to "set-backs."
On the other hand, the defendant contends that the erection of the apartment house will not violate any of the restrictions; that an apartment house is not a "business;" that the erection (at a cost of approximately $200,000) and operation of the apartment house will not detract from the residential character of the community but will be an asset thereto and will relieve the existing housing shortage.
It is needless to go into details as to the "neighborhood scheme" or the "residential character" of the community intended by the developers. These phases of the controversy are fully covered in my opinion in the La Fetra Case and apply with equal force to the instant case.
The main issue here, and the only one which requires consideration, concerns itself with the quaere: Is the erection *Page 380 
and operation of the apartment house in question a "business" within the meaning of the restrictions as to the use of the premises "for any business purpose whatever?" I think not. I believe that the intent of the developers was that this restrictive clause should apply to mercantile or commercial businesses, such as stores for the sale of merchandise, repair shops, manufacturing establishments, c., which existed and were commonly known as such when the restrictive covenants were first used. The "modern apartment house" was then unknown in the immediate or surrounding neighborhood of the premises in question. Hence it was not contemplated by or included within the restrictive clause. But it is clear that the developers anticipated the erection of hotels where "not less than 200 guests" could be accommodated, and the modern apartment house is not unlike a hotel.
In 26 C.J.S., § 164 (at p. 533), it is stated that:
"Covenants in general words, prohibiting the erection of anything except `dwelling houses' or `first class dwelling houses,' do not, in the absence of specific language, such as `for use of one family' or `of type now prevailing,' limit dwellings to the type prevailing when the covenant was executed, but include any structures used for residential purposes as developed by changing conditions."
Restrictive covenants should be construed in accordance with the intent of the language used by the parties imposing them, and in the light of the circumstances and conditions existing at that time; if the covenants or restrictions are vague or ambiguous, then against the covenant or restriction. Fortesque v.Carroll, 76 N.J. Eq. 583; Underwood v. Herman Co., 82 N.J. Eq. 353; Rosenblatt v. Levin, 127 N.J. Eq. 207.
In Newbery v. Barkalow, 75 N.J. Eq. 128, Vice-Chancellor Howell stated the rule thus:
"It must be conceded that restrictive covenants must not be vague or uncertain, that the complainant's right to insist upon the covenant and to invoke the injunctive power of the court must be clear and satisfactory."
See Holman v. Parker, 94 N.J. Eq. 41; Underwood v. Herman Co., supra. *Page 381 
And in Fortesque v. Carroll, supra, (at p. 585), Mr. Justice Garrison, speaking for the Court of Errors and Appeals, said:
"* * * it is well settled that in cases where the right of a complainant to relief by the enforcement of a restrictive covenant is doubtful `to doubt is to deny.' * * * courts of equity do not aid one man to restrict another in the uses to which he may put his land unless the right to such aid is clear." Citing Newbery v. Barkalow, supra.
 See Holman v. Parker, supra; Howland v. Andrus, 81 N.J. Eq. 175; Ronan v. Barr, 82 N.J. Eq. 563.
Restrictive covenants, to be enforceable in equity must be reasonable. Meaney v. Stork, 80 N.J. Eq. 60 (at p. 65);affirmed, 81 N.J. Eq. 210.
I am satisfied that the erection and operation of the contemplated apartment house will not be a violation of the restrictive clause in question, as to the use of the lots of land "for any business purpose whatever," any more than if defendant erected, for rental purposes, six separate cottages or houses, one "cottage" or "house" on each lot. And the "Edgemont Drive Apartments" established a precedent for including six residences under one roof. If six, why not 59? An apartment house accommodating 59 families can be no more objectionable than a hotel accommodating two hundred or more guests.
Complainants, in their brief, quote copiously from the case ofPocono Manor Association v. Allen, 12 Atl. Rep. 2d 32
(337 Pa. 442), stating that their doing so was "because of the parallelism between the physical conditions of the development of Loch Arbour and of Pocono Manor, and because of the similarity of the two covenants." They also quote the "covenant" under discussion in that case. However, their quotation seems to cover only a part of the "covenant" quoted by the court. The full quotation by the court is as follows:
"`Under and subject, nevertheless, to the express conditions and restrictions following, viz.: that at no time hereafter shall any part of the ground hereby conveyed to be used or occupied for the distillation or brewing, manufacture or sale *Page 382 
of any malt, vinous, spirituous or intoxicating liquors, nor for any offensive use whatever, but the same shall be used only for the erection and maintenance thereon of buildings for cottageresidences and dwelling purposes, and not for any commercial, manufacturing or business use whatsoever; * * * and provided further, that not more than one cottage or dwelling house
shall be erected upon any lot hereby conveyed.'" (Italics mine.)
The defendant in that case attempted to convert a private dwelling into a house of four or five apartments. The court said:
"We believe that the restriction invoked constitutes a legal barrier to the threatened intrusion. The only buildings permitted on the restricted land are those `for cottage residences and dwelling purposes.' The dominant idea in the phrasing is that of `cottage residences,' and it is further stipulated that only `one cottage or dwelling house' shall be upon a single lot. Oneness of family in habitation is encouraged; plurality of families in habitation is interdicted.
"The general expression `dwelling purposes' follows the particular expression `cottage residences' and therefore the former expression is presumed to be restricted by the particular designation, and to include only things of the same kind as that enumerated. * * * `Where specific expressions are followed by those which are general, the latter will be confined to things of the same class as the former.'"
There is no evidence before me from which to judge the "parallelism" between the physical conditions of the development of Loch Arbour and of Pocono Manor. I, therefore, will not attempt it. However, a careful examination of the wording of the "covenant" in the Pocono Manor Case and of the construction placed thereon by the court reveals a marked difference between the "covenant" in that case and the "restrictive covenants" in the instant case, wherein the words "house, cottage, or other building" are used in relation to some of the other provisions of the covenants. The limitation here is not such as in the PoconoManor Case and that case cannot be considered as of controlling force here. *Page 383 
There do not appear to be any cases in this state where theidentical question involved in the instant case has been decided. But there are a few "similar" cases in other jurisdictions which are helpful. I will cite two, which, I believe, are pertinent. In Brandenburg v. Country ClubBuilding Corp., 163 N.E. Rep. 440 (332 Ill. 136) where the covenant restricted the use of the premises for residential purposes and forbade their use for business, factory or warehouse purposes, the court said:
"The erection, management, and control of an apartment building is not a breach of the covenant restricting the purposes for which the premises may be used. * * * The incidental maintenance of a dining room and cigar and news stand for the accommodation of the tenants, and of an office for the conduct of business with them, cannot be said to be a use for business purposes outside of the business of conducting and operating the apartment building."
In Johnson v. Jones, 90 Atl. Rep. 649 (244 Pa. 386), the restriction provided:
"`That nothing but a church or dwelling house, together with the out buildings necessary for the convenience and comfort of the occupants thereof, shall ever be erected upon any part of the said land; that none of the structures so erected shall ever be used as a business place, manufactory, or drinking saloon, or used for any other purpose than a dwelling house, or its necessary out buildings, or a church,' c." (Italics mine.)
The court held, in substance, that the erection of a series of apartment buildings four stories high, each story to consist of two separate flats, each of which was to contain rooms adapted only for dwelling purposes, did not violate the restriction. SeePeirce v. Kelner, 156 Atl. Rep. 61 (304 Pa. 509).
Counsel for the complainants cites and stresses the applicability of the case of Rosenblatt v. Levin, supra, as favorable to the complainants' case. I fail to see it. In that case the restrictive covenant, as quoted by the court, was as follows:
"* * * `that no building except for cottage resident *Page 384 
purposes or hotels or drug stores shall be erected on any part of said land. * * * that the objects of the covenants is to secure the health, beauty, ornamentation and value of the premises.'"
The defendants were conducting a rooming house and boardinghouse and the complainant sought to enjoin them from "`using and permitting the aforesaid dwelling house to be used in any other manner than a private dwelling house.'" Vice-Chancellor Sooy, in allowing the injunction, said:
"The covenant confines the building to be erected to `cottage resident purposes.'"
He further stated that:
"In Jones v. Mulligan, 121 Atl. Rep. 608, Vice-Chancellor Ingersoll held that the language `cottage resident purposes' is of uncertain and indefinite character, and so it is when applied to the erection of a one or two-family house, as was the case under consideration by that Vice-Chancellor, but this is not so when the question is whether a rooming house or boarding house business may be conducted under the restriction herein."
The Rosenblatt Case is not helpful to the complainant.
No evidence was presented by either side as to whether or not the erection and operation of the proposed apartment house will add to or detract from the residential character of the community. However, counsel have discussed this question in their respective briefs and after due consideration of their arguments, I am inclined to the view that it will be more of a benefit to the community than a detriment or a detraction from the residential character of the neighborhood. It will not change it to a business community. Furthermore, an examination of the plans and specifications of the proposed apartment house, which is to be three stories high, built of brick and apparently modern in every detail, at a cost of approximately $200,000, does not lend itself to the criticism and the claim of the complainants that "it will disrupt and destroy the existing community scheme of development."
I will advise a decree dismissing the bill of complaint. *Page 385