JOSEPH S. SHOYER et al.

*v.*

MAX MERMELSTEIN.

[Decided July 21st, 1921.]

1. Covenants restricting the purchasers of lots in a given area to the erection of one-family houses constitute a neighborhood or community scheme, the regulations of which a lot owner must observe if he had notice thereof at the time he purchased his lot, or if he was put on his guard and reasonable inquiry would have led to such knowledge.

2. Where all the houses in a given area were one-family houses, a purchaser of a lot in such area, under a deed restricting him to the erection of a two-family house which should have the appearance of a one-family house, was charged with notice of a community scheme included in the deeds to others in the community, but not in the deed to him, and may be enjoined from erecting a two-family house, although he had inquired of

his grantor and consulted the city authorities as to whether he might build such a house, and although houses in the plot north of such restricted area and adjoining the north line of his lot were all two-family houses. Under such circumstances, it is the duty of the purchaser of the lot to inform himself by inquiry in the immediate vicinity, as he had knowledge from his own deed. that there were structural restrictions on the land.

On final hearing.

*Messrs. Congleton, Stallman & Hoover,* for the complainants.

*Messrs. Stein, Stein & Hannoch,* for the defendant.

BACKES, V. C.

The bill is to restrain the defendant from building a two-family house on his lot in a community devoted to residences for one family only, in violation of covenants in the deeds from the common grantor to the owners of homes and other lots in the community. The land is in the Clinton Hill section of Newark, and was plotted and laid out in streets and building lots by Joseph P. Sanford and Margaret J. Sanford, his wife, owners by the entirety, and is the northerly section of the plot of building lots described in *Sanford v. Keer, 80 N. J. Eq. 240.* After the death of her husband Mrs. Sanford rearranged and replotted the lots in the area north of Madison avenue and sold the same upon the representation that the lots lying between Madison avenue and a line three hundred and fifty feet north of the avenue would be restricted to one-family houses, and incorporated in all her deeds (except in the deed to the defendant for his lot, and one to another person who has, however, built a one-family house) a restriction

"that the said party of the second part [grantee], his heirs and assigns, shall and will not at any time hereafter prior to the first day of July, 1955, erect, or suffer or permit to be erected, any dwelling-house upon said premises hereby conveyed to cost less than the sum of $4,500, * * * *that said dwelling-house shall only be used as a private house and for one family only and for no other purpose or use whatsoever.*"

There are other restrictions that are not involved in this litigation. There are thirty-eight lots in the restricted district, on

which twenty-five one-family houses have been erected. Some of the houses occupy two lots. Eleven lots are still vacant. Some of them have been sold by Mrs. Sanford, subject to the one-family-house restriction. The rest of the Sanford plot lying south of Madison avenue, and which was developed earlier, is likewise restricted to one-family houses. In February of the present year Mrs. Sanford sold and conveyed to the defendant a lot on South Eleventh street, in the restricted area, with a restriction to the effect that the dwelling to be erected thereon should not be arranged for, contain or be occupied by more than two families, and that the said dwelling is to be so constructed as to appear from the outside as a one-family house. The defendant commenced the erection of a two-family house, but upon the filing of the bill suspended operations. The bill is filed by seven lot owners who, or whose lessors, built one-family houses on their lots.

The restriction sought to be vindicated, it will be observed, is upon the use and occupation of the house and not upon the character of the structure, but as the exterior of a two-family house differs widely in appearance from that of a one-family house—and I understand the defendant desires to erect the ordinary two-family house on his lot, and this in violation of his own covenant—defendant's counsel has asked me to pass upon the enforceability of the covenant as though it restricted the structure to a one-family house.

That the restrictive covenants exacted by the Sanfords from the purchasers of their lots constituted a neighborhood or community scheme was found as a fact by this court and was approved by the court of errors and appeals in *Sanford* v. *Keer, supra.* The situation remains unchanged, and that question must be regarded as settled. The duty of lot owners to observe the regulations of a neighborhood scheme is also well settled in this state. *DeGray* v. *Monmouth Beach Club House, 50 N. J. Eq. 329; Sanford* v. *Keer, supra.*

The only question to be decided is, Had the defendant notice of the scheme at the time he purchased his lot? If he had, he is, in conscience, bound to respect it. *Brewer* v. *Marshall, 19 N. J. Eq. 537.* It is agreed by counsel that he had not actual notice of

the restrictions, but this does not relieve him. If he was put upon his guard, and reasonable inquiry would have led to knowledge, he is as firmly bound as if he had read every one of the deeds. Was he forewarned? It seems to me that the uniformity of the houses—one one-family house to a lot—(one-family and two-family houses have distinctive external characteristics: a two-family house extends deeper into the lot than a one-family house, as each apartment occupies a floor) would at once attract the attention of a would-be purchaser and provoke inquiry. That alone was, in my judgment, enough to put the defendant to inquiry. *Bridgewater* v. *Ocean City Association, 88 N. J. Eq. 351; Winslow* v. *Newcomb, 87 N. J. Eq. 480.* He was no stranger to community developments and their ideals. He knew there were structural restrictions on the plot, for his own deed held him down to a two-family house, which was to have the appearance on the outside of a one-family house. Why the camouflage? This, to my mind, brought home to him directly the exclusive character of the place, and inculpates him in Mrs. Sanford's unworthy effort to violate and repudiate her obligation to her prior grantees. The defendant says he inquired of Mrs. Sanford—the most likely person to deceive him—and he consulted city authorities, who told him they had no objection to two-family houses, and there he stopped. Had he done what a reasonable man would have done in the circumstances—asked for information at any of the houses in the locality of his lot—he would have known the truth—the truth, as I think, he all the while knew.

The defendant points to the fact that the houses on the plot north of the line three hundred and fifty feet northerly and parallel with Madison avenue are all two-family houses, and that as his lot adjoins the line on the south, he was lulled into a feeling of security that he could build a two-family house, as Mrs. Sanford had represented to him he could. The defendant's proposed two-family house would be the first invasion of the restricted area. The northerly boundary of the tract above the line is irregular. It runs from zero on some streets to five building lots on others. The line which marks the boundary between the one and two-family houses runs across the tract at the zero point.

On all sides of the Sanford tract above the line there are all sorts of tenements. These facts, to which the defendant calls particular attention as having disconcerted him, or reassured him of Mrs. Sanford's representations, as you like, only strengthen my conviction that when he bought he knew, or should have known, there was a proscription of two-family houses. He observed the distinctive character of the houses below the line and their difference from those above. If he did not, in fact, know the reason for the glaring and arbitrary line of demarkation, it was his duty to have informed himself, and this he could have accomplished with little exertion by inquiry in the immediate vicinity.

I conclude that the defendant was charged with notice of the community scheme, and that he is bound to observe its ordinances. I will advise an injunction restraining him from erecting a two-family house.

Costs to the complainants.