Olive C. Jennings et al., complainants-respondents,

*v.*

Anna Baroff and Julius Baroff, defendants-appellants.

[Submitted October term, 1928. Decided February 4th, 1929.]

*Messrs. Feinberg & Feinberg* and *Messrs. Dembe & Dembe,* for the complainants-respondents.

*Messrs. Gross & Gross (Mr. Isaac Gross* and *Mr. Merritt Lane,* of counsel), for the defendants-appellants.

The opinion of the court was delivered by

White, J.

In 1910 one Oliver, being the owner of an entire block of vacant land, bounded by Fortieth street, Avenue C, Thirty-

ninth street and Avenue B, as well as of other adjacent land, conveyed by warranty deed the western end of such block of land having frontages of two hundred feet on Avenue B, two hundred and eighty-five feet on Thirty-ninth street, and one hundred and twenty-five feet on Fortieth street, respectively, to the Bayonne Building Company, reserving a restrictive covenant limiting the buildings which might thereafter be erected upon the land so conveyed to use as "one-family residence, dwelling or church," requiring them to set twenty feet back from the street line, and fixing a minimum building cost of $2,500 each. The grantor, Oliver, did not covenant to subject his other and adjoining land to like restrictions, nor did it appear that he represented in any way to any one that he would do so. In fact there was no evidence except this one lone covenant itself, that at the time it was imposed it was intended to comprise a part of a neighborhood improvement scheme. Under such circumstances, and in the absence of language indicating that the benefit of such covenant was intended to become appurtenant to and to run with the title to the grantor's remaining land (in which case not a neighborhood scheme, but a burden in the nature of an equitable easement would result. *Hemsley* v. *Marlborough House Co.* (*second case*), *68 N. J. Eq. 596; Renals* v. *Cowlishaw, 11 Ch. Div. 866*), the covenant must be construed to have been reserved for the personal benefit and convenience of the grantor in his use or disposition of his remaining ground, and to terminate with his death or by virtue of an earlier release by him, or upon an earlier termination of his interest in its performance. *Hemsley v. Marlborough Hotel Co.* (*first case*), *62 N. J. Eq. 164; affirmed, 63 N. J. Eq. 804.*

The following year (1911), Oliver conveyed a lot in the same block, part of his "remaining land," fronting one hundred and fifty feet on Thirty-ninth street by one hundred feet on Avenue C, reserving a similar restrictive covenant, but limiting its duration to thirty years, and the year after (1912), conveyed another portion of his "remaining land" in the same block fronting one hundred and fifty feet on Thirty-ninth street, and one hundred feet on Fortieth street, without reserving any restriction whatsoever. Oliver having died, his

widow and devisee in 1916 conveyed a lot also part of said "remaining land" in the same block and immediately adjoining the land granted to Bayonne Building Company, without reserving any restrictive covenant whatsoever, and in 1920 conveyed a lot also part of said "remaining land" fronting fifty feet on Thirty-ninth street and also immediately adjoining the land conveyed to Bayonne Building Company in 1910, reserving the restriction but limiting its duration to ten years. Also in the year 1919 Oliver's widow and devisee conveyed a lot, part of Oliver's adjacent land on the other side of Thirty-ninth street having a frontage of twenty-five feet on Avenue B and on Thirty-ninth street of eighty-five feet, and immediately opposite to defendants' lot, without reserving any restrictive covenants whatsoever.

Such a failure of universality would have been equally fatal to a neighborhood scheme had the first restrictive covenant in the 1910 deed from Oliver to Bayonne Building Company been a part of a neighborhood scheme. *De Gray* v. *Monmouth Beach Club House Co., 50 N. J. Eq. 329; Sanford* v. *Keer, 80 N. J. Eq. 240; Scull* v. *Eilenberg, 94 N. J. Eq. 759; Sailer* v. *Podolski, 82 N. J. Eq. 459.*

In this connection it may be here noted that after Oliver's death his widow and devisee, who as his wife was a party to his deed to the Bayonne Building Company, formally released defendants' land from the restriction contained in the Oliver deed. It is urged that this release was inoperative as against the rights of complainants because they purchased before the release was executed. We do not agree with this contention. As against a neighborhood scheme there could, of course, be no release in violation of vested rights in the covenant, nor could there be such a release as against a subsequent purchaser of part of the remaining land from the original grantor where the covenant had been made appurtenant to and to run with the title to such remaining land. But where, as here, the covenant was simply a reservation for the personal benefit of the grantor, he might release it whenever he saw fit, and if he did not do so during his lifetime his death would effect the release when that occurred, as would also the ending during his lifetime of his interest in the property for the better

enjoyment or disposition of which he reserved his personal right. We do not see, however, under the circumstances here existing, that the release is a material element as against complainants, because, as before pointed out, they have no interest in the restriction so released. We do not find it necessary therefore to pass upon the question of the widow's interest in this personal benefit reservation resting on her joiner, as his wife, in the deed which Oliver made to the Bayonne company, nor upon the termination of such interest, if it exists, because of the ending of the widow's interest in the other Oliver lands, the use or disposition of which rendered the performance of the covenant a benefit to him.

In 1913, three years after it took title from Oliver as above noted, the Bayonne Building Company divided up into building lots and conveyed to purchasers the tract of land so acquired by it from Oliver, and in so doing in some of its deeds to lot purchasers, expressly imposed, without time limitation, the same restriction that the Oliver deed had contained; in other deeds the same restriction, but limited in its operation to a period of years; while in yet other deeds (including one or more for lots fronting on Avenue B), constituting nearly half of the entire enterprise, no restriction whatsoever was inserted. Clearly under the authorities last above cited a neighborhood scheme could not be spelled out of this situation.

This brings us to a somewhat novel feature involved in this case and doubtless the one which appealed to the learned vice-chancellor, who advised the injunctive decree which forms the subject of this appeal. This feature results from the fact that a large portion of the lots into which was divided the land conveyed by the Oliver deed to the Bayonne company (including all those on Avenue B and some on Thirty-ninth street) have since had dwellings each costing at least $2,500 built upon them, all setting back twenty feet from the street line, except the lot at the corner of Thirty-ninth street and Avenue B now owned by the defendants, which latter lot remains vacant and upon which the defendants propose to erect a fourteen-family apartment house, four stories high, which proposed house is the subject of the injunction decree now brought up on appeal. The complainants own dwelling houses and lots adjoining

defendants' lot (also parts of the Oliver grant, as is, too, the lot of defendants), and it is alleged that substantial depreciation in the value of complainants' properties will result if the proposed apartment house shall be erected. Defendants' title contains no restrictive covenant except the one reserved by the deed from Oliver to the Bayonne company as aforesaid.

The question, therefore, is, does the fact that the owners of all the lots fronting on Avenue B in the Oliver grant except the defendants, have erected improvements which in fact conform to the terms of the restriction reservation in that grant, have the effect of raising an obligation among them as in favor of and against each other, including the one, the defendant, who has not built at all, which is enforceable in equity, although in fact there exists no neighborhood scheme nor other restrictive covenant, which, in the absence of that fact, they are entitled to enforce. We think this question must be answered in the negative. To hold otherwise would establish a right in an owner of one of four or any other number of houses fronting on a particular street and all exactly alike and all setting back the same distance from the street line, to prevent the owners of the other houses from replacing their respective houses with higher ones built nearer the street, although in so doing they could be violating no existing title restriction and would only be doing with their own property what they properly chose to do with it. As was said in *Fortesque* v. *Carroll, 76 N. J. Eq. 583:* "Courts of equity do not aid a man to restrict another in the uses to which he may put his land unless the right to such aid is clear."

Upon this question we agree with the view regarding it expressed by Vice-Chancellor Stevens in *Genung* v. *Harvey, 79 N. J. Eq. 57,* who, in commenting upon *Winfield* v. *Henning, 21 N. J. Eq. 188,* said: "I may add that in view of the numerous discussions which this important subject has undergone since that case was decided, it may be questionable whether the chancellor's suggestion that the case was one of apparent and continuous easement can be agreed to. If an owner has two lots having houses on the same line, and sells one of them, using nothing but the ordinary language of conveyancing, it could hardly be claimed that there has arisen,

by implication from the circumstance that both houses stand on the same line, an apparent and continuous easement in favor of either. I do not see how the existence of a covenant held by a third party which would enable that third party to enjoin the owners from building beyond the line, to the detriment of his [the third party's] land, could create an easement in each of the two lots for the benefit of the other. It seems to me that if it create any easement [and it has been held that it does not] *Brewer* v. *Marshall, 19 N. J. Eq. (40 C. E. Gr.) 537; Hayes* v. *Waverly and Passaic Railroad Co., 51 N. J. Eq. (6 Dick.) 345, 349*—it would be one attaching only to the covenantee's land."

It is urged however that the observance of the terms of the Oliver restriction was not merely voluntary, but was a compliance occurring during Oliver's lifetime with the personal benefit restriction which was binding on the property while he lived and continued benefitted thereby. We do not think this alters the situation. As before pointed out Oliver did not create a neighborhood improvement scheme. He only prescribed for his own personal benefit certain requirements, the observance of which, he thought, would enhance his enjoyment, and chance of advantageous disposition of, his remaining property. He could release these requirements whenever he saw fit, although if he had released one lot a court of equity would doubtless have refused to enforce at his instance the restriction on a lot adjoining the one released, not only became such enforcement by him would be inequitable, but also because, having voluntarily destroyed the benefit from the restriction to his other land by such release, there would be no foundation (viz., benefit to be protected) for its enforcement against the adjoining lot.

For the foregoing reasons the decree of the court of chancery is reversed and the cause is remitted to that court in order that a decree dismissing the bill may be entered.

*For affirmance*—KALISCH, KATZENBACH, LLOYD, JJ. 3.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, WHITE, VAN BUSKIRK, McGLENNON, HETFIELD, DEAR, JJ. 9.