JAMES J. CLARKE and FLORENCE CLARKE, CHARLES L. PILE and GERTRUDE M. PILE, IDEAL BUILDING AND LOAN ASSOCIATION, HARRY D. B. GRAHAM and ELIZABETH GRAHAM and EVA E. ROLES, complainants-appellants,

*v.*

BENJAMIN KURTZ, JOHN CAZELLO and FRANK CAROMANO, defendants-respondents.

[Argued October 29th, 1937.   Decided January 26th, 1938.]

*Mr. S. Rusling Leap* and *Mr. William R. Smith,* for the complainants-appellants.

*Mr. Louis B. LeDuc,* for the defendants-respondents.

The opinion of the court was delivered by

CASE, J.

Benjamin Kurtz is the owner of a lot of land in the city of Camden, whereon John Cazello, the lessee, in conjunction with Frank Caromano, proposes to open a saloon and sell intoxicating liquors under a license heretofore granted to Caromano. The bill, filed by several owners of lots in the same tract, sought to enjoin the proposed use as contrary to a restrictive covenant which appears *infra*. Chancery dismissed the bill. Complainants appeal.

The lands of the complainants, as well as that of defendant Kurtz, all came from a tract owned and developed by real estate men known in the case as Cramer and Griffee, who acquired the tract in 1892, charted the same into streets and building lots (approximately one hundred and sixty) and filed the map in the office of the county register of deeds. Thenceforth, until January 1st, 1920, all conveyances, save two, out of these common grantors contained the following covenant:

"It is hereby specially covenanted and agreed by and between the parties hereto that the said party of the second part, his heirs and assigns, shall not at any time use and occupy the said premises nor allow them to be used or occupied for the manufacture, storage or sale of intoxicating liquors and this for the mutual benefit of peace and good order to the grantor the said party of the second part and the other grantees of said parties of the first part."

The exceptions were a deed to the Westminster Presbyterian Church and a deed from one to the other of the common grantors. The various lots owned by the several parties to the litigation were conveyed out of the common grantors in the following chronological order and at the times indicated: Ideal Building and Loan Association, 1895; Clarke, 1898; Kurtz, 1909; Roles, 1914; Graham, 1919; Pile, 1923. The deeds out of Cramer and Griffee for the Clarke, Building and Loan Association, Kurtz, Roles and Graham lots all contained the covenant; although the deed to Kurtz, being from one of the intermediate owners, did not. The deeds into Roles and Graham contained the covenant. The deed into Pile did not. Nevertheless, Pile took, and Graham

and Roles also, with actual knowledge of the covenant, which was held out to them, and relied upon by them, as an inducement to the purchase of the lots. To this time there have been no violations of the covenant and there has been no change in the neighborhood conditions.

Appellants do not claim either upon the personal covenant of any grantee or upon the existence of a neighborhood scheme. Their reliance, deducible from the printed briefs and clearly stated at the oral argument, is exclusively upon the theory that the restrictive covenant created an equitable easement (a descriptive word used in the cases although not technically correct) as enunciated in *Coudert* v. *Sayre, 46 N. J. Eq. 386,* and subsequent cases. The opinion of Vice-Chancellor Van Fleet in the *Coudert Case* puts it thus:

"The doctrine now in force on this subject I understand to be this: that when it appears by the true construction of the terms of a grant that it was the well-understood purpose of the parties to create or reserve a right, in the nature of a servitude or easement, in the property granted, for the benefit of other land owned by the grantor, no matter in what form such purpose may be expressed, whether it be in the form of a condition, or covenant, or reservation, or exception, such right, if not against public policy, will be held to be appurtenant to the land of the grantor, and binding on that conveyed to the grantee, and the right and burthen thus created and imposed will pass with the lands to all subsequent grantees. And any grantee of the land to which such right is appurtenant, acquires, by his grant, a right to have the servitude or easement, or right of amenity, as it is sometimes called, protected in equity, notwithstanding that his right may not rest on a covenant which, as a matter of law, runs with the title to his land, and notwithstanding that it may also be true that he may not be able to maintain an action at law for the vindication of his right. The cases in which this doctrine has been recognized and enforced are quite numerous, but only a few will be cited. *Brewer* v. *Marshall, 4 C. E. Gr. 537; Kirkpatrick* v. *Peshine, 9 C. E. Gr. 206; Gawtry* v. *Leland, 4 Stew. Eq. 385; Whitney* v. *Union Railway Co., 11*

*Gray 359; Parker* v. *Nightingale, 6 Allen 341; Schwoerer* v. *Boylston Market Association, 99 Mass. 285; Hills* v. *Miller, 3 Paige 254; Coles* v. *Sims, 5 DeG., M. & G. 1; Western* v. *MacDermott, L. R., 1 Eq. Cas. 499; S. C. on Appeal, L. R., 2 Ch. App. 72."*

While the appellants do not, in so many words, concede that the tenor of their argument excludes complainants Ideal Building and Loan Association and Clarke from its favorable application, we think that the admission is implicit and that, whether so or not, the result is inevitable. These two owners acquired before the conveyance out of the common grantors to Kurtz's predecessors, whereas the language of the *Coudert Case* carries the easement to the *remaining* lands owned by the grantors, whether the ownership stays in the grantors or passes to subsequent grantees. Moreover, the common grantors did not bind themselves. This phase of the rule is more specifically stated in *Leaver* v. *Gorman, 73 N. J. Eq. 129,* wherein lands in the city of Asbury Park were in question and the complainant sought to enforce a covenant contained within certain deeds given by Mr. Bradley, the common grantor. Vice-Chancellor Stevens said (at *p. 131*), (italics ours) :

"The law is this: A court of equity will restrain the violation of a covenant entered into by a grantee, restrictive of the use of lands conveyed, not only against the grantee covenantor, but against all subsequent purchasers having notice of the covenant, whether it run with the land or not. There is, however, this distinction: The original grantor, in imposing the covenant upon the grantee, either may or may not bind himself. If he does not bind himself, then his grantee, having no right of action against him, cannot pursue any other grantee to whom he may subsequently convey the whole or a part of the remaining lands. In the case of the lands in question, Mr. Bradley chose to remain unbound. In none of the multitude of deeds offered in evidence does it appear that he covenanted to impose the restrictions in question upon the lands remaining in his hands. The consequence is that while a subsequent grantee of Mr. Bradley of one lot could enforce the covenant against a prior grantee of another

lot, *a prior grantee could not enforce the covenant against a subsequent grantee.*"

To similar effect is *Bowen* v. *Smith, 76 N. J. Eq. 456,* opinion by Vice-Chancellor Leaming, quoting his own words as used in *McNichol* v. *Townsend, 73 N. J. Eq. 276:*

"The equitable grounds on which restrictions of this nature may be enforced at the instance of a subsequent grantee of the common grantor are well defined. One owning a tract of land may convey a portion of it, and by appropriate covenant or agreement may lawfully restrict the use of the part conveyed for the benefit of the unsold portion, providing that the nature of the restricted use is not contrary to principles of public policy. In such case a subsequent purchaser of all or a part of the remaining land for the benefit of which the stipulation was made may in equity enforce the observance of the stipulation against the prior grantee upon the principle that the rights created by such stipulation are transferable as part of the land to which they are attached (*Coudert* v. *Sayre, 46 N. J. Eq.* (*1 Dick.*) *386*), and such subsequent purchaser may in equity enforce the stipulation against a person who holds title under the prior purchaser, who has acquired title, with notice of the restriction, upon the principle which prevents a party having knowledge of the just rights of another from defeating such rights. *Brewer* v. *Marshall, 19 N. J. Eq.* (*4 C. E. Gr.*) *537, 542.* As no privity exists between the subsequent purchaser from the common grantor and the original grantee or the persons holding under him, the right of action is necessarily dependent upon the existence of the fact that the stipulation was originally made for the benefit of the remaining land of the common grantor."

The doctrine of equitable easement is, we think, soundly expounded in the foregoing excerpts from chancery opinions. We conclude that the decree should be affirmed as to the prior owners, Ideal Building and Loan Association and Clarke.

The complainants, Graham, Roles and Pile, are subsequent grantees of the common grantors, and the fact that the restriction is for their benefit as well as for that of the common gran-

tors is evident from the words of the covenant—"for the mutual benefit of peace and good order to the grantor the said party of the second part and the other grantees of said parties of the first part." The vice-chancellor rightly determined that the provisions and omissions of the covenant—particularly the omission of a reciprocal obligation upon the remaining lands—were such that there was no neighborhood scheme (*Scull* v. *Eilenberg, 94 N. J. Eq. 759*), but that the covenant and the circumstances under which Graham, Roles and Pile acquired were such that an equitable easement arose in favor of the properties owned by these complainants. However, the vice-chancellor, basing his findings upon *Sanford* v. *Keer, 80 N. J. Eq. 240,* considered that the common grantors, in omitting the restrictive covenant from a number of the deeds given after January 1st, 1920, had abandoned any purpose which they might have had to subject all of the lots to the restrictive covenant and that it was therefore inequitable to restrict the defendants' lands and leave others in the neighborhood free to conduct the business which is sought to be enjoined. We do not agree with that determination of fact or with the legal conclusions drawn therefrom. The deed to Pile and the deeds to certain others, all of them after January 1st, 1920, did not contain the covenant. Let us assume that that left the lands conveyed by those deeds free of the restriction. It does not necessarily follow that the lands which had been conveyed subject to the restriction were thereby unburdened. The lands conveyed without the restriction were as free before conveyance out as afterward. The common grantors had not agreed to bind their remaining lands either while in their own ownership or upon sale to others. This court in a somewhat similar situation, citing but not passing upon *Leaver* v. *Gorman, supra,* and *Coudert* v. *Sayre, supra,* refused to consider the relief of a covenantor's grantee for the reason that subsequent grantees of the common grantor, although not subject to a like restriction, were not brought into the cause. *Franklin* v. *Creth, 97 N. J. Eq. 538.* The *Sanford Case* dealt with the incidents of a neighborhood scheme, and that type of land restriction, as we have seen,

has such basic differences from an equitable easement that in the case before us the latter exists and the former does not. It is to be noticed too that whatever observations there are in the *Sanford Case* as to the result of an abandonment, the holding is that there had been no abandonment in respect of the relief sought and that the building, which was the crux of the controversy, should be removed as violative of the neighborhood scheme. Other incidents of our own case which serve to distinguish it from the hypothesis upon which some of the otherwise pertinent remarks in the *Sanford Case* were rested are that there has been no change in the character of the neighborhood, that there has heretofore been no infraction of the covenant and that there has been no abandonment either by or with the acquiescence of the complainants. We think that the *Sanford Case* is not, and that other decisions which rest upon the attributes of a neighborhood scheme or upon an abandonment by or acquiesced in by the party seeking the relief, or upon a change in the condition of the neighborhood are not, controlling. The question is whether it is equitable to enforce the covenant which Kurtz's predecessors willingly agreed to and of which Kurtz had constructive knowledge when he bought. What equities might be presented in behalf of an owner whose title had come out of the common grantors without the restriction need not be anticipated. That problem is not before us. It is significant that the omission of the covenant began at a time practically contemporaneous with the adoption of the prohibition amendment. It does not expressly appear in the proofs that the original owners considered that the fundamental change in our constitutional and statutory law was inclusive of the provisions of the restrictive covenant and would accomplish the same results without the formal insertion of the covenant in the deeds; but we think that we may not read in such circumstances a purpose to abandon the restrictions already imposed, particularly when the persons who seek relief are not the common grantors but those who took title in reliance upon the validity of the covenant. Even if we were to assume an abandonment by the common grantors, it remains that the restriction was

imposed for the benefit of subsequent grantees as well as for the common grantors, and Cramer and Griffee could not, even by solemn deed, much less by silent omission or simple change of purpose, deprive those grantees of the beneficial enjoyment of the restriction. See *Bridgewater* v. *Ocean City Railroad Co., 62 N. J. Eq. 276,* affirmed on the opinion below, *63 N. J. Eq. 798.*

Under the circumstances of the case we think that the relief sought should be granted to the appellants Graham, Roles and Pile. Although Pile's deed did not contain the restrictive covenant, yet he was a subsequent grantee and therefore within the class of those for whose benefit the restriction was imposed; not only did he, as we have said, have actual knowledge that the tract was a restricted area but he had that knowledge direct from Cramer, one of the common grantors, and acted upon it as an inducing factor in making the purchase.

The record will be remitted to the court of chancery to be there disposed of in a manner consistent with our findings.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, DEAR, WELLS, WOLFS-KEIL, RAFFERTY, JJ. 12.