The prayer of the bill of complaint is that the defendants be enjoined from constructing thirty-two duplex apartment houses on a triangular city block of land in the City of Camden bounded by Bradley Avenue, Euclid Avenue and Park Boulevard. Complainants allege that the construction of other than detached, single-family dwellings in this triangular block and the adjoining quadrangular block across Bradley Avenue is prohibited by a neighborhood scheme of restriction. No application for adinterim restraint was made by complainants and at the time of final hearing the thirty-two apartment houses had been completed and the sixty-four apartments were all occupied by tenants. Complainants now seek a decree mandatorily compelling the demolition and removal of the buildings.
Colwood Realty Co., the defendant corporation which erected the apartment buildings, purchased all of the land in the triangular block from Forest Hill Park Development Co. Its project was designed to provide "defense housing" and was financed under Federal Housing Administration regulations and after guaranteed commitments by that agency. Thirty-two $6,000 mortgages were given by Colwood Realty Co. to defendant First Federal Savings and Loan Association of Upper Darby; each was dated March 24th, 1942, and each covered a single duplex apartment house; of the aggregate sum of $192,000, $34,159.82 had been advanced by the loan association before service of process in this cause, and a total of $189,746.06 had been paid over before final hearing.
The restriction for which complainants contend is not to be found in the chain of title to the lands in the triangular block upon which the apartment houses have been erected. *Page 173 
This important fact they concede. Equally important is the fact that no reciprocal covenant to restrict remaining lands is to be found in any of the deeds to the complainants and others who accepted conveyances of land in the quadrangular block containing restrictive covenants. Another fact is important. All of the complainants took title to their lots in the quadrangular block before title to the triangular block passed to the defendant Colwood Realty Co. The rule is settled in this state that "if the original grantor does not bind himself by a [reciprocal] covenant such as the one under consideration, then his grantee, having no right of action against the grantor, cannot pursue any other grantee to whom the latter may subsequently convey the remaining land, either in whole or in part. A subsequent grantee can enforce such a covenant against a prior grantee of another lot, but a prior grantee cannot enforce the covenant against a subsequent grantee." Beattie v. Howell, 98 N.J. Eq. 163, 165;129 Atl. Rep. 822; Leaver v. Gorman, 73 N.J. Eq. 129, 131;67 Atl. Rep. 111; Bowen v. Smith, 76 N.J. Eq. 456;74 Atl. Rep. 675; Enderle v. Leslie Construction Co., 102 N.J. Eq. 569, 571;141 Atl. Rep. 758; Clarke v. Kurtz (Court of Errors andAppeals), 123 N.J. Eq. 174, 177; 196 Atl. Rep. 727.
The complainants not being parties to the deed of Colwood Realty Co., and having therefore no privity either of legal estate or of contract with that defendant, their right to enforce the restriction, if any, is equitable only. It depends upon satisfactory proof of the existence of a general plan for the improvement of these two city blocks by a uniform scheme and the insertion of covenants in the deeds of purchasers, intended for the benefit of each purchaser, and to which each purchaser with notice was subject. Morrow v. Hasselman (Vice-Chancellor Emery), 69 N.J. Eq. 612; 61 Atl. Rep. 369; De Gray v. MonmouthBeach Club House Co., 50 N.J. Eq. 329; 24 Atl. Rep. 388; Clarke
v. Kurtz, supra.
In their bill of complaint complainants suggested that a neighborhood scheme of restriction affecting these two city blocks was conceived and put into effect by Parkside Land Company, the original developer of most of the land in the *Page 174 
vicinity. The evidence utterly failed to support that theory. Complainants now argue that the plan to restrict originated with Nathan Friedenberg and Harry H. Teitelman who purchased the two blocks of land from Parkside Land Company, and was made effective by them, by the defendant Forest Hill Park Development Co. which purchased most of the land from them, and by Kaighn Construction Co. and Tyson Construction Co. the builders of eight of the homes owned by complainants.
"The most complete way [to create a neighborhood scheme of restriction], of course, is by a reciprocal covenant, whereby the grantor covenants to insert, in apt language, like covenants in all deeds of his remaining lots or lands for the common benefit of all of his grantees and their assigns. Another way is for him to offer his lots for sale, and to sell them, on the representation that all lots will be conveyed subject to like covenants for the common benefit, in which case purchasers with notice or knowledge will be bound by the covenant. But, in the absence of either of these methods (as was the case here), the courts will only spell out such a scheme from a plan of lots and sales therefrom where all the deeds from the common grantor for the lots making up any particular neighborhood group of common benefit therefrom, are made subject to the common covenant." Judge White, in Scull v. Eilenberg (Court of Errors andAppeals), 94 N.J. Eq. 759, 771; 121 Atl. Rep. 788.
Friedenberg and Teitelman held title to the two blocks of land from April 6th, 1925, to December 6th, 1933. During that period building lots were sold to only eight purchasers and only three dwellings were erected. The lots sold were located in the larger, quadrangular block. On December 6th, 1933, Friedenberg and Teitelman conveyed their remaining land in that block and all of the land in the triangular block to Camden Homes Co.
The first lots sold by Friedenberg and Teitelman fronted on Kaighn Avenue. Mr. Teitelman, called as a witness by complainants, testified that, at the time of those sales, he and his associate anticipated building homes for themselves on that street, and, to protect their future residences, he formulated *Page 175 
and imposed building restrictions; that covenants were inserted in conveyances of lots on Kaighn Avenue and, to protect the rear of their future properties, in deeds for lots on Bradley Avenue. Included in all of these covenants was the following clause, so simply and definitely worded as to permit of no possible doubt but that the grantors intended to reserve to themselves the power to deal freely with restrictions in succeeding conveyances: "* * * that the party of the second part, his heirs or assigns, shall not at any time hereafter erect or construct or cause or permit to be constructed any twin dwelling house or more than one dwelling house upon the land and premises hereby sold withoutthe written permission of the parties of the first part, theirheirs or assigns, * * *." (Italics mine.)
Complainant John L. Bantivoglio holds title to his home on Kaighn Avenue by mesne conveyance from Friedenberg and Teitelman. The restrictive covenant inserted by Friedenberg and Teitelman in the conveyances they had made up to that time appears in Bantivoglio's deed.
In not one conveyance did Friedenberg and Teitelman covenant to subject their remaining land to like restrictions or, so far as the evidence discloses, represent to anyone that they would do so. In two instances they gave written waivers of restriction violations — where garages were so located as to extend beyond the fixed building lines. They had taken title free of building restrictions; their conveyance to Camden Homes Co. contained no restrictive covenant.
The facts and circumstances proven touching the acts of Friedenberg and Teitelman will not justify a finding that a neighborhood scheme prohibiting the construction of other than detached, single-family dwellings in the triangular city block with which we are particularly concerned was, by them, conceived or created. It is fundamental that one who conveys a portion of a tract of land by a deed containing a restrictive covenant may reserve to himself, as Friedenberg and Teitelman reserved to themselves, the power to deal freely with restrictions in succeeding conveyances — to vary them, modify them, or, omit them altogether. When Friedenberg and Teitelman added to the words of restriction the phrase "without *Page 176 
the written permission of the parties of the first part, their heirs or assigns," they gave definite notice that they were reserving such power and right to themselves. "That right was the privilege of adapting each transaction to the conditions as they might obtain in the course of time, and while grantor still owned other land in the neighborhood." McComb v. Hanly (Court ofErrors and Appeals), 132 N.J. Eq. 182; 26 Atl. Rep. 2d891; reversing, 128 N.J. Eq. 316; 16 Atl. Rep. 2d 74;Laverack v. Allen (Court of Chancery), 2 N.J. Mis. R. 637;130 Atl. Rep. 615; Jennings v. Baroff (Court of Errors andAppeals), 104 N.J. Eq. 132; 144 Atl. Rep. 717; 60 A.L.R. 1219.
Camden Homes Co. conveyed all of the land taken from Friedenberg and Teitelman to Edith Marchant and she, in turn, conveyed those lands to the defendant Forest Hill Park Development Co. No restrictive covenants were contained in those deeds. Title to the land in the triangle, I determine, passed to Forest Hill Park Development Co. free of any building inhibition.
Did Forest Hill Park Development Co. create the restriction and put it into effect? To answer this question we must, if possible, ascertain the intent which prompted the acts of the company. The first occurrence helpful in judging intent is the execution by the corporation of a written agreement of sale of a frontage of 100 feet on Bradley Avenue in the quadrangular block. The other party to the agreement was identified therein as "R.H. Rosenfeld, agent, * * * or his nominee, * * * hereinafter called the `Buyer.'" The agreement recited that the buyer or his nominee contemplated the erection of "homes" on the land purchased and that financing would be insured by the Federal Housing Administration. The seller covenanted to deliver a marketable title, free and clear of all encumbrances except any restrictions created by Parkside Land Company. Complainants offered no proof as to any such restrictions. The only testimony in point was that of a vice-president of West Jersey Title and Guaranty Company who examined the record title and said that no restrictions were ever imposed except "liquor restrictions." Certainly a proscription against a construction of *Page 177 
other than detached, single-family dwelling houses was not generally imposed by Parkside Land Company on lands in the Parkside district; the evidence demonstrated that on Bradley Avenue, directly across Park Boulevard from the homes of most of the complainants, there are brick dwellings built in pairs or in solid rows; that, shortly before the institution of this suit, a row of brick dwellings was constructed on Park Boulevard between Bradley Avenue and Kaighn Avenue, facing the quadrangular block; and that, within a few blocks of the two blocks in question there are duplex and other types of apartment houses.
In consideration of the initial purchase by Mr. Rosenfeld, Forest Hill Park Development Co. extended to him an option to purchase its other lands in that section of the city, including the land in the triangular block. Complainants called Mr. Rosenfeld as a witness: It was his testimony that he obtained the agreement and option for a number of individuals who later formed two corporations, Kaighn Construction Co. and Tyson Construction Co. The option was permitted to expire after three conveyances had been made to the two construction corporations. The first deed was dated November 27th, 1939. Kaighn Construction Co. was the grantee and the conveyance was made without restriction. The land conveyed consisted of lots 68 to 72, both inclusive. These lots were located in the quadrangular block and fronted on Bradley Avenue. Kaighn Construction Co. then erected a sample house on the westerly half of lot 70 and on lots 71 and 72. This property, on August 22d 1940, was conveyed to complainants Rufus L. Bright and Mary N. Bright. Another dwelling erected by Kaighn Construction Co. on its remaining lots was, on May 13th, 1940, conveyed to complainants Morris A. Rabkin and Sylvia L. Rabkin, his wife. The following covenant, with other restrictions, was inserted in these two conveyances: "1. The structure to be built upon each lot shall be for residential purpose only and shall be a detached single-family dwelling of not less than two stories in height, but with a one or two car garage permitted."
Forest Hill Park Development Co. then, by two deeds dated respectively June 10th, 1940, and August 8th, 1940, conveyed *Page 178 
to Tyson Construction Co. without restriction the westerly half of lot 55 and lots 56 to 67, both inclusive, and the westerly half of lot 14 and lots 12 and 13. These lots were also in the quadrangular block. Tyson Construction Co. erected six dwellings on these lands and, in the period from December 2d 1940, to March 10th, 1941, complainants Arthur E. Weitzman and Flora Weitzman, Herman Heine and Rosalind L. Heine, Albert A. Batoff and Rose Batoff, and Harry Shapiro and Roslyn Shapiro, purchased four of these dwellings. The Batoff property faces Kaighn Avenue; the other dwellings face Bradley Avenue. Also, during that time Tyson Construction Co. sold the other two dwellings. One was purchased December 10th, 1940, by Cipriano Moles and Ursula Moles. Mrs. Moles, on January 10th, 1941, sold this property to the complainants Abraham Mackler and Ethel Mackler. The other dwelling was sold and conveyed on January 7th, 1941, to William Rovner and Evelyn Rovner. Mrs. Rovner, on September 19th, 1941, sold the same to complainant Evelyn W. Cohen. Restrictions identical with those imposed by Kaighn Construction Co. were inserted in each of the conveyances made by Tyson Construction Co. and in the conveyances made by Ursula Moles and Evelyn Rovner.
Complainants Albert A. Batoff and Rose Batoff purchased the easterly half of lot 14 and lots 15 and 16 in the quadrangular block from Forest Hill Park Development Co., and complainants Herman Z. Cutler and Yetta Cutler purchased their land in that block from that company. The deed to Mr. and Mrs. Batoff was dated February 6th, 1942, and that to Mr. and Mrs. Cutler, December 31st, 1941. These two conveyances contained the following covenant, and no reciprocal restriction: "* * * that the above described lands and premises shall be used for the construction of dwelling houses only, said houses to be single, at least two stories in height, and not more than one to be constructed on each fifty foot lot."
The option of Mr. Rosenfeld having been permitted to expire, Forest Hill Park Development Co., on September 16th, 1941, entered into an option agreement with the defendant Frank Salasin. This contract reserved to the latter the right to purchase all of the land in the triangular block. In *Page 179 
the instrument the owner covenanted that its title was a marketable one and such as would be insured at regular rates by any reputable New Jersey title company. This option was permitted to lapse but, on February 16th, 1942, another option agreement, identical except as to dates, was executed by the parties. Under this latter option Mr. Salasin took title to the triangle of land in the name of a company he controlled, Colwood Realty Co. No mention of the restriction contended for by complainants was made in either of these option agreements or in the agreement of sale and option given to Mr. Rosenfeld; no neighborhood scheme of restriction prohibiting the construction of buildings other than detached, single-family dwellings is suggested in any of the three instruments.
Complainants charged in their bill and attempted to prove that the acts of Kaighn Construction Co., Tyson Construction Co. and Mr. Rosenfeld, with relation to building restrictions, were binding upon the defendant Forest Hill Park Development Co. They asserted that David Baird, Jr., the president of Forest Hill Park Development Co., had been the owner of a mortgage upon the lands of Friedenberg and Teitelman and that he organized Forest Hill Park Development Co. to take title when a deed was offered to avoid a foreclosure. This appears to be the fact. Complainants also alleged that the building restrictions imposed by Kaighn Construction Co. and Tyson Construction Co. were imposed at the instance of Mr. Baird and his corporation. This assertion the evidence failed to sustain. Complainants now argue that, despite the absence of reciprocal restrictions in the six deeds, a covenant was, nevertheless, impressed on the land in the triangular block by representations of Mr. Rosenfeld, made for and with the authority of Mr. Baird and his company. They also argue that, if such authority has not been proven, Colwood Realty Co. is estopped from denying it, having, as is claimed, taken the land in the triangular block with notice of such conduct on the part of its grantor, Forest Hill Park Development Co., as would estop the latter from asserting its legal title to defeat an implied covenant of restriction. *Page 180 
The testimony upon which the foregoing contentions of the complainants are based was admitted by the court over the objection of the defendants and only upon the assurance of complainants' counsel that authority of Mr. Rosenfeld and of the two construction companies to bind Forest Hill Park Development Co. would be definitely established. That agency was not proven nor is there sufficient proper evidence before me to warrant application of the doctrine of estoppel.
Restrictions on the use of land are in derogation of common law, and restrictive covenants are to be construed most strictly against the person or persons seeking to enforce them, all doubts being resolved in favor of a free use of property. To invoke the injunctive power of equity, a covenant, express or implied, must be clearly and satisfactorily established. Newbery v.Barkalow, 75 N.J. Eq. 128, 133; 71 Atl. Rep. 752; Marsh v.Marsh, 90 N.J. Eq. 244; 106 Atl. Rep. 810; reversing, 89 N.J. Eq. 110; 104 Atl. Rep. 373; Holman v. Parker; 94 N.J. Eq. 41;118 Atl. Rep. 334; Trainer v. Calef, 96 N.J. Eq. 657;126 Atl. Rep. 301; Polhemus v. DeLisle, 98 N.J. Eq. 256;130 Atl. Rep. 618; Paff v. Margerum, 103 N.J. Eq. 74; 142 Atl. Rep. 6;Ritter v. Jersey City Dist. Missionary Soc. of M.E. Church,105 N.J. Eq. 122; 147 Atl. Rep. 195; Rosenblatt v. Levin, 127 N.J. Eq. 207; 12 Atl. Rep. 2d 627. "* * * courts of equity do not aid one man to restrict another in uses to which he may put his land unless the right to such aid is clear." Mr. Justice Garrison for our Court of Errors and Appeals in Fortesque v.Carroll, 76 N.J. Eq. 583; 75 Atl. Rep. 923.
Complainants quote from 21 C.J., ¶ 177 p. 1172: "Where the true owner of property holds out another, or allows him to appear as the owner of or as having full power of disposition over the property, and innocent third persons are thus led into dealing with such apparent owner or person having such apparent power of disposition, they will be protected." "Nevertheless, the rule, although general in its terms," the text continues, "operates only to protect those who, in dealing with others, exercise ordinary caution and prudence," and, "It is of course essential that the conduct of the party against whom the estoppel is claimed should clearly amount to the *Page 181 
clothing of another with title to or authority over the property in question."
The representations of Mr. Rosenfeld, complainants testified, were accepted by them as truth and fact and were sufficiently persuasive to induce them to make their purchases. However that may be, I am satisfied that the evidence does not warrant a finding that Mr. Rosenfeld or Kaighn Construction Co. or Tyson Construction Co. ever had power or authority to impose building restrictions upon the land in the triangular block. Certainly they never held either the legal or the equitable title; and no testimony has been introduced indicating that they were ever clothed by the owner with such sweeping power as would bind the owner in so vital a matter.
Vice-Chancellor Bentley, in Beattie v. Howell, supra, commented upon a situation somewhat similar to that disclosed in the testimony to which I have just referred. First calling attention to the fact that no restrictive building covenant appeared in the deed or the chain of title through which the defendant Howell took his land, he added that owners were "not responsible for fraudulent inducements held out by others to persuade the complainants to buy their land, even though the others were the officers and agents of the common grantor of all the parties, but respecting lands other than those purchased by the defendant." "It may be," said the Vice-Chancellor, "that a gross fraud was practiced upon them by others, but there is nothing in the bill to show that the defendants, or either of them, ever had any knowledge thereof, not to mention part therein." It may be that a fraud was practiced upon complainants by Mr. Rosenfeld, or that the complainants are persuaded that such is the fact. I am convinced, however, that there is no proper evidence before me which would justify a finding that Mr. Baird or Forest Hill Park Development Co. had any part therein or any knowledge thereof. There is likewise no evidence before me which would justify a finding that Mr. Rosenfeld had any authority to impress building restrictions upon the land in the triangle. All that was proven would indicate only that Mr. Rosenfeld, if he succeeded in finding a possible purchaser, expected and would be forced to arrange the terms of sale with the owner. *Page 182 
Mr. Rosenfeld was the sales agent for Kaighn Construction Co. and for Tyson Construction Co. It was his testimony that he was not the agent for Forest Hill Park Development Co. for the sale of any of its land; that, as a broker, he attempted to interest possible purchasers in lands of that company but, having no authority, was forced to submit each and every proposal to the owner. Complainants assert that immediately following the execution of the sale and option agreement between Forest Hill Park Development Co. and Mr. Rosenfeld, Kaighn Construction Co. and Tyson Construction Co. went into possession of the entire tract; that they revised the original plan of lots in the two city blocks; that they dealt with the public at large and with the complainants in particular on the basis that they owned the entire tract, and that an advertising sign of Mr. Rosenfeld was placed in the triangular block. It was proven that the construction companies did revise the older plan of lots in the two city blocks, that they used their revised plan in selling the dwellings they erected and that Mr. Rosenfeld used the plan in attempting to sell some of the remaining lands of Forest Hill Park Development Co. There is no evidence whatever that the latter company approved or in fact had anything to do with the revision. There was evidence that Mr. Rosenfeld erected a large advertising sign somewhere on the triangle of ground in the summer of 1941. The sign remained there until in about December, 1941. All the sign contained, however, were the words "For information see R.H. Rosenfeld." and the address of Mr. Rosenfeld. The only other testimony on this point was that which was admitted conditionally and failed to prove authority.
Complainants also base their argument for an estoppel on the fact that Mr. Rosenfeld and the two construction companies, in newspaper and circular advertising, represented that the whole tract, including the triangle, would be developed by the erection of single-family, detached dwellings; and that no more than thirty-five homes could be built in the development. Evidence of these facts was also admitted conditionally; no proof whatever was offered to connect Mr. *Page 183 
Baird or his company with this advertising, or to indicate any knowledge of it on their part.
Complainants also rely upon the fact that Mr. Rosenfeld negotiated two sales of lots of Forest Hill Park Development Co. in the quadrangular block, and that the conveyances contained a restrictive covenant similar to that contained in the conveyances by the two construction companies. The testimony was that Mr. Rosenfeld did not act as agent for the owner but as a friend of the prospective purchasers; that he submitted their propositions to the owner for them and the owner made the sale and the conveyance; Mr. Rosenfeld received no commission on the sales.
Complainants also attempt to make point of the fact that in 1939 Mr. Rosenfeld was retained by Forest Hill Park Development Co. to compromise and settle delinquent taxes against the land it owned in these two city blocks with the City of Camden; that the company, being then without sufficient funds, agreed to pay Mr. Rosenfeld for his services when sufficient of its lands were sold, and Mr. Rosenfeld was, therefore, anxious to make a sale of the land in the triangular block. The evidence established the agency of Mr. Rosenfeld to compromise taxes, and only that; when the compromise had been accomplished he naturally expected to be paid and, when opportunity afforded, he introduced possible purchasers to the company; there was no agency to sell; there was no authority to impose restrictions.
Complainants also urge that the representations of Mr. Rosenfeld and the building scheme pursued by the construction companies were effective to impose a neighborhood plan of building restriction upon the triangular block of land because of the fact that Mr. Rosenfeld, or his nominees, held an option to purchase. With this I cannot agree. No estate in the land passes under an option to purchase, the purchaser acquiring only an inchoate right to the land which, pending the option period, will be protected in equity. Charles J. Smith Co. v. Anderson
(Court of Chancery), 84 N.J. Eq. 681, 684; 95 Atl. Rep. 358.
"To create a restriction on the use of property conveyed, the person attempting to impose the restriction must have title to the property, and authority *Page 184 
to create the restriction." 26 C.J.S. 512. Boyd v. Park RealtyCorp., 137 Md. 36; 111 Atl. Rep. 129. The right of property does not vest in an optionee until he has made his election under the option, when his equitable estate thereby acquired will be clothed in legal form. The Venus, Rae, Master, U.S. Sup. Ct., 8Cranch 253; 3 L.Ed. 553; Charles J. Smith Co. v. Anderson,supra.
Complainants were not mislead by the fact that Mr. Rosenfeld held an option to purchase the triangle; so far as the evidence discloses, complainants had no knowledge whatever of the existence of the option agreement. And, notwithstanding the insistence of complainants that they purchased home sites in the quadrangular block on the assumption and representation that only detached single-family dwellings would and could be erected on the triangular block, the evidence does not indicate that any of them examined the public records or inquired of the record owner to ascertain the facts. One complainant, Mr. Cohen, did visit the West Jersey Title and Guaranty Company offices and did make such inquiry, but after he had purchased his home. He was advised that there were only old "liquor restrictions" on the triangle of land.
In sharp contrast with the credulousness or carelessness of the complainants, Mr. Salasin, although assured by the optionor that it would give him a marketable title such as would be insured at regular rates by any reputable New Jersey title company, nevertheless made inquiry as to restrictions at the West Jersey Title and Guaranty Company. After examination of the title, he was advised by a vice-president of the title company that there were no restrictions against the lands he contemplated purchasing except the old "liquor restrictions." But, say the complainants, Mr. Salasin, on his visit to the land, should have observed that in the adjoining block all of the dwellings were of the detached, single-family type, and should have been warned that he might be purchasing land included in a neighborhood plan with building restrictions. Complainants also claim that the defendant, First Federal Savings and Loan Association of Upper Darby took its mortgages under circumstances which should have *Page 185 
put it on notice of the existence of a neighborhood scheme. Again they point to an inspection of the land by its president, its secretary and other officers. In this connection complainants call attention to the decision in Shoyer v. Mermelstein,93 N.J. Eq. 57; 114 Atl. Rep. 788, where Vice-Chancellor Backes held that the purchaser should have been forewarned of possible building restrictions because of the uniformity of the houses already constructed, and because the purchaser was no stranger to community developments and their ideals. However, the Vice-Chancellor also pointed out that in the case before him the restrictive covenants exacted by the common grantor from purchasers of lots constituted a neighborhood or community scheme and that the defendant knew there were structural restrictions on the land he purchased because "his own deed held him down to a two-family house, which was to have the appearance on the outside of a one-family house." The situation in the instant case is entirely different. Inasmuch as I find in this case that there was no neighborhood building restriction binding upon the land when Mr. Salasin purchased the triangle and took title in Colwood Realty Co., and that there was no one who then had the right to enforce a restrictive building covenant against it, notice of the restrictions in complainants' deeds and in any other conveyances of land in the quadrangular block, actual or imputable, is immaterial.
It should also be remarked that the mere fact that lot purchasers in improving their respective properties have conformed to the terms of an old restrictive covenant in the chain of title, not a part of a neighborhood scheme, and which they have not in any other way acquired the right to enforce, will not in itself raise a neighborhood scheme of restriction among them so that they can enjoin one of their number who attempts to build upon his own lot a house or structure not in conformity with the terms of such old restriction. Jennings v.Baroff, supra.
If I entertained any doubt whatever (and I do not) that the rules stated in the foregoing discussion effectively bar complainants from the relief they seek, I should nevertheless feel compelled to advise a dismissal of the bill on the authority *Page 186 
of the case of Radey v. Parr, 108 N.J. Eq. 27;153 Atl. Rep. 628, cited and approved by our Court of Errors and Appeals in its recent decision in Droutman v. The E.L. M. Garage, Inc.,129 N.J. Eq. 545 (at pp. 545 and 546); 20 Atl. Rep. 2d75. In the Radey Case, the defendant Parr purchased lots in a tract under development with knowledge that upon the land there was displayed an advertising sign proclaiming it to be an "Exclusive Location." He also purchased with knowledge that the common grantor had made representations and warranties to previous purchasers of land in the tract that it would be developed exclusively as a residential area; also, with knowledge of restrictions in an earlier conveyance in the chain of title. Complainants contended there, as complainants contend here, that such a sign, considered in connection with such parol representations, invoked the doctrine of an implied covenant of proscription within the principles defined in Lennig v. OceanCity Association, 41 N.J. Eq. 606; 7 Atl. Rep. 491; Bridgewater
v. Ocean City Railroad Co., 62 N.J. Eq. 276; 49 Atl. Rep. 801;affirmed, 63 N.J. Eq. 798; 52 Atl. Rep. 1130, and Bridgewater
v. Ocean City Association, 85 N.J. Eq. 379; 96 Atl. Rep. 905,
and, that the parol engagement of Parr to the effect that the tract would be devoted exclusively to residential purposes was operative as an estoppel against Parr and his grantee with notice. There the representations were by the owner of the legal title; here the representations relied upon are those of Mr. Rosenfeld, unauthorized to bind the owner and without power to impress the restriction upon the land. Vice-Chancellor Leaming formulated and stated three conditions where parol testimony might be sufficient to impress restrictions upon land. The Vice-Chancellor found as a fact, as I must find here, that none of those conditions were established by competent evidence. The Vice-Chancellor declared that the provisions of the statute of frauds stood as a bar to the relief there sought; so here. Mr. Justice Parker speaking for the Court of Errors and Appeals in the Droutman Case said: "* * * we think that the rule laid down by him [Vice-Chancellor Leaming] in that case should be regarded as settled in this state." *Page 187 
One attempting to weigh and judge the evidence produced by complainants, or produced by the defendants and relied upon by the complainants, is everywhere confronted by doubts and uncertainties. As to the most essential elements necessary to be established to sustain the case of the complainants, there is no clear and convincing proof. Even to doubt that building restrictions existed, or to doubt that they have been legally established, is, in a case of this kind, to deny relief.
A decree will be advised that the bill be dismissed. *Page 188