HARRY L. CAREY, AGNES T. CAREY, JAMES M. FOOKS, FRANCES H. FOOKS,
Plaintiffs,

*vs.*

SHELLBURNE, INC., a Delaware corporation,
Defendant.

*New Castle, November 23, 1965.*

*Robert C. O'Hora* and *John P. Daley*, Wilmington, for plaintiffs.

*Donald W. Booker*, Wilmington, for defendant.

SHORT, Vice Chancellor: Plaintiffs, lot owners in a development known as Shellburne, seek to enjoin defendant, the developer, from using retained lands for commercial purposes.

Shellburne comprises a tract of land in Brandywine Hundred, New Castle County, Delaware. It was purchased in 1949 by H. W. Booker Construction Co. (Construction Co.), a Delaware corporation, for development purposes. Construction Co. caused the land to be plotted and the plot of Shellburne, showing streets and block and lot numbers with dimensions, was recorded. The plot also

shows as a part of Shellburne a parcel of land bounded by Carr Road, Carwell Place, Weldin Road and Shipley Road with the designation "RESERVED FOR FUTURE DEVELOPMENT" and the marking "Apartment or Business Set-back Line" and "Residential Set-back Line." It is this parcel, hereafter called Shipley Road parcel, which is the subject of this litigation. In August 1949 Construction Co. recorded building and use restrictions for a portion of Shellburne. This did not include the Shipley Road parcel. In May 1950 Construction Co. conveyed Shellburne, with certain exceptions not here material, to defendant Shellburne, Inc. Defendant proceeded to develop the lands by constructing streets and installing sewer and water lines. It also recorded deeds establishing use and building restrictions as to the remainder of the development, not, however, including the Shipley Road parcel. In September 1954 the Levy Court of New Castle County, pursuant to power delegated by the Legislature, zoned the Shipley Road parcel C-1, thereby limiting its use to commercial purposes.

The development and sale of lots in Shellburne was conducted in the following manner: As defendant developed a portion of a street and five or six lots on either side thereof became suited for building purposes defendant conveyed such lots to Carroll W. Griffith Company (Griffith Company), a Delaware corporation, engaged in the business of real estate sales. Griffith Company paid defendant for lots when title was transferred. Upon finding a purchaser for a lot Griffith Company would enter into a contract of sale with the purchaser for sale of the lot improved by a dwelling house. Construction Co., after approving the plans and specifications, would build the dwelling and upon completion Griffith Company would settle with the purchaser and thereafter with Construction Co.[1] Each of the parties, defendant, Griffith Company and Construction Co., profited from this course of dealing which was employed to facilitate financing.

---

1. It appears that another builder constructed the improvements on a few of the lots in Shellburne, but I attribute no significance to this fact for the reason that such builder was brought into the picture with the consent of Construction Co.

On April 5, 1955, plaintiffs Carey signed a contract of sale agreeing to purchase from Griffith Company a lot in Shellburne designated on the plot thereof as Lot 23, Block B, which lot, among others, had previously been conveyed to Griffith Company by the defendant, said lot to be improved by "a single family one floor plan house." Plaintiffs Carey testified without objection that during the course of the negotiations leading up to the execution of said contract Carroll W. Griffith, Jr., the sole owner of Griffith Company, represented to them that the Shipley Road parcel would not be used for commercial purposes. These plaintiffs further testified that they relied upon Griffith's representation and that they eventually took title to the property by deed of Griffith Company dated August 10, 1955. The testimony also discloses that a salesman for Griffith Company, one Leigh Johnson, in all probability made a similar representation to these plaintiffs.

On April 26, 1955, one Albert J. Muller and his wife signed a contract of sale agreeing to purchase from Griffith Company a lot designated on the plot of Shellburne as Lot 56, Block B, which lot, among others, had been previously conveyed to Griffith Company by the defendant, said lot to be improved by a detached dwelling house and garage. Construction Co. erected the improvements called for by the contract and Griffith company conveyed title to the Mullers by deed dated November 8, 1955. Plaintiffs introduced into evidence without objection a letter dated May 4, 1955 signed by H. W. Booker, Jr., as president of Shellburne, Inc. and directed to Carroll W. Griffith which stated "Please be advised the open land on Shipley Road will not be used for commercial purposes." Whether or not any representation as to the use of the Shipley Road parcel was made to the Mullers by Griffith or any of his salesmen prior to April 26, 1955 does not appear as the Mullers did not testify.

On March 17, 1956 plaintiffs Fooks signed a contract of sale agreeing to purchase from the Mullers Lot 56, Block B, Shellburne, and title thereto was subsequently conveyed to these plaintiffs by deed of the Mullers dated April 6, 1956. In this transaction Griffith Company acted as agent for the Mullers. Plaintiffs Fooks testified

that during the course of the negotiations leading up to the execution of the contract of sale the Shellburne, Inc., letter of May 4, 1955 was shown to them by Leigh Johnson, salesman for Griffith Company, and that in reliance upon the representation therein set out they agreed to pay to the Mullers approximately $1,000 more than they would otherwise have paid.

Defendant, Shellburne, Inc., has now indicated its intention to make commercial use of the Shipley Road parcel. Plaintiffs have filed this action to enjoin the proposed use. They contend that Griffith Company in making the representations relied upon was the agent of defendant under general principles pertaining to the law of agency or, in the alternative, that defendant, Griffith Company and Construction Co. were joint adventurers and by reason of that relationship Griffith Company was not only a principal but also the agent of its co-adventurers. They also contend that the use restrictions placed upon Shellburne by Construction Co. and defendant established a neighborhood residential plan which precludes the use of any lands in Shellburne for commercial purposes. This is the decision after final hearing.

I shall first consider plaintiffs' contention that a neighborhood residential plan was established by the restriction placed upon Shellburne. While the several deeds by which the restrictions were established may be said to be uniform as to the uses to which lots in the development might be put, it is apparent that the Shipley Road parcel was not intended to be and, in fact, was not included within the bounds of any of such deeds. This fact alone would militate against plaintiffs' contention. But there is a further reason why the existence of a general plan can not be held to include the Shipley Road parcel. The plot of Shellburne which was recorded and referred to in plaintiffs' deeds expressly showed that this land was reserved for future development. It further expressly disclosed setback lines for apartment or business use as well as residential. Plaintiffs were charged with notice of the plot and the reservations thereon appearing. *Conly v. Industrial Trust Co.,* 27 Del.Ch. 28, 29 A.2d 601; *Cashvan v. Darling,* 34 Del.Ch. 570, 107 A.2d 896. It is, therefore, clear that no neighborhood residential plan was established

for Shellburne by the use restrictions placed thereon by the several deeds, at least insofar as the Shipley Road tract is concerned.

Plaintiffs' reliance upon the principles of agency does not, in the circumstances here presented, solve the issue raised by the complaint. I am satisfied from the evidence that plaintiffs have failed to establish under general rules of the law of principal and agent that Griffith Company was the agent of defendant. On the other hand, I am satisfied that with the limitations hereafter mentioned the relationship of joint adventurers as between defendant, Griffith Company and Construction Co. is made out by the evidence. Therefore, by virtue of such relationship Griffith Company was the agent of its co-adventurers so long as the joint enterprise continued. Since plaintiffs' Careys right to relief depends, in part, upon different principles from those of plaintiffs' Fooks, separate consideration must be given as to each of these plaintiffs.

In the transaction involving the sale of Lot 56, Block B, to the Mullers, Griffith Company, by virtue of the joint adventure, was the agent of defendant and of Construction Co. However, upon the completion of the transaction and the passing of the deed the joint adventure as to this lot was concluded. In the sale by the Mullers to plaintiffs Fooks, Griffith Company acted as agent for the seller. Because the joint adventure as to the lot had ended Griffith Company was no longer the agent of defendant. It had no authority to represent to plaintiffs Fooks what use defendant intended to make of the Shipley Road parcel. Whatever authority it may theretofore have had to exhibit to prospective purchasers defendant's letter of May 4, 1955 had been expressly revoked by defendant. Moreover, the letter of May 4, 1955 is in violation of the parol evidence rule as an attempt to engraft a covenant upon the deed. *Gibney v. Stockdale Corp.*, 20 *Del.Ch.* 272, 174 *A.* 117, 119. This principle will be dealt with in considering the right of plaintiffs Carey to the relief which they seek. Mention should here be made of plaintiffs' contention that the representation made in the letter of May 4, 1955 was a covenant on defendant's part which ran with the land. Plaintiffs' theory is that the covenant was established in the transaction whereby the Mullers purchased Lot 56, Block B. There is no tes-

timony that the Mullers relied upon the letter in making their purchase. In fact, the letter is dated several days after the contract of sale which was entered into by the Mullers with Griffith Company. There is no testimony as to any oral representation made by defendant or by Griffith Company prior to the contract of sale. In short, there is nothing in the record to show that the representation made in the letter in any way induced the Mullers to either make the bargain or to go through with it. Neither is there anything to indicate that the parties, that is the Mullers and Griffith Company as agent of defendant, intended the representation to be even a personal covenant. The contention that it was a covenant running with the land must, therefore, be rejected.

The right of plaintiffs Carey to relief is, in one aspect, dependent upon the applicability of the parol evidence rule to the situation presented. In *Gibney v. Stockdale Corp., supra,* this court held that evidence that the defendant, through its duly accredited agent, had represented to plaintiffs that no lots in a development would be permitted to be used for business purposes was inadmissible as being in violation of the parol evidence rule. The court said that the offer of such evidence amounted to "an attempt to graft a covenant plan the deed binding on the grantor and supported solely by parol evidence." Except to observe that the attempt here is to graft a covenant upon the deed binding on a third party, I can see no difference between the situation here presented and that in Gibney. Here, assuming that the Shipley Road parcel was included within the subject matter of the joint enterprise, there were oral representations by defendant's agent that a particular parcel would not be used by its principal for commercial purposes. Plaintiffs Carey did not see the letter of May 4, 1955. Their reliance was simply upon the oral representation.

Plaintiffs attempt to distinguish the *Gibney* case on several grounds. They first say that the report of *Gibney* fails to show if contracts of sale preceded execution of the deeds. Assuming that there were no contracts of sale I fail to see any distinction in the legal principle involved. In any event, the Chancellor in *Gibney* quoted with approval from the case of *Stoever v. Gowen, 280 Pa.*

424, 124 *A*. 684 which stated the general rule that a deed made in full execution of *a contract of sale* of land merges the provisions of the contract therein. Plaintiffs say that no mention is made in *Gibney* as to whether the buyers relied upon the representations. Lack of a showing of reliance was not the ground upon which the evidence was excluded. I take it from the remarks of the Chancellor that it would have mattered not to his decision if reliance had been alleged. Plaintiffs say that the parol evidence issue was not important in *Gibney*. I do not agree. No more than a casual reading of the opinion is required to demonstrate that this was the principal ground upon which the evidence offered was rejected.

Plaintiffs contend that the representation here made was collateral to the subject matter of the contract of sale and deed and is therefore provable by parol. They cite a number of cases which stand for this proposition. However, as plaintiffs concede, the cited cases which concern the development of land deal with those situations where a neighborhood plan has been established. As before observed, the evidence here does not warrant a finding that the Shipley Road parcel was a part of any such plan. Plaintiffs also cite certain cases which do not deal with residential development. Among these is *Re v. Magness Const. Co.*, 10 *Terry* 377, 117 *A.2d* 78, wherein Superior Court cited the general rule that where a deed is executed and delivered pursuant to a contract of sale of realty, the latter merges with the former and becomes void. The court pointed out that there was a recognized exception to this rule in those cases where the contract of sale contemplated the performance of acts in addition to the conveyance and quoted from the case of *Dieckman v. Walser*, 114 *N.J.Eq.* 382, 168 *A*. 582.[2] The Superior Court held that the contract called for the performance of two separate acts, the conveyance of land improved by a dwelling and the building of a house in accordance with plans and specifications, and that such a contract fell within the exception to the rule of merger. The same type of contract is here involved. However, it is to be noted that the representation upon which plaintiffs rely was not expressly in-

2. The New Jersey cases dealing with negative covenants restricting the use of land will be hereinafter mentioned.

cluded in the contract of sale as in Re, but was made orally to them in negotiations leading thereto. Furthermore, the representation did not pertain to the land which was the subject of the contract. And again, the representation was made to these plaintiffs by Griffith Company the asserted agent of defendant.

But was Griffith Company defendant's agent with respect to the Shipley Road parcel in the transaction leading up to the Carey purchase? If so, it was only by virtue of the joint adventure. The subject matter of that enterprise was the development, improvement and sale of building lots in Shellburne. It did not include other lands owned by any of the joint adventurers. While the Shipley Road parcel was included in the plot of Shellburne, it was obviously not the intention that it become a part of the enterprise. I say this because that parcel, unlike the remainder of the development, was not laid out on the plot of Shellburne in building lots. It was expressly reserved on the plot "for future development." Moreover, it was not included in any of the deeds by which restrictions were established for Shellburne. Plaintiffs were charged with record notice of all these facts. The parcel, therefore, was not a subject of the joint adventure and Griffith Company was not, in negotiations leading to the Carey purchase, the agent of defendant. Therefore, since Griffith Company was not authorized to bind defendant it was without power to impress a covenant upon defendant's land. *Bright v. Forrest Hill Park Development Co.,* 133 *N.J.Eq.* 170, 31 *A.2d* 190. On its facts, the Bright case is in many respects comparable to the present. To the same effect see *Radey v. Parr,* 108 *N.J.Eq.* 27, 153 *A.* 628, approved by the Court of Errors and Appeals of New Jersey in *Droutman v. E. M. & L. Garage, Inc.,* 129 *N.J.Eq.* 545, 20 *A.2d* 75.

In the Radey case the court held that the relief there sought was barred by the Statute of Frauds. As particularly appropriate to plaintiffs' contention that the representations here made were collateral and therefore did not merge in the deed, the Vice Chancellor said: "That map, in the Lennig case [*Lennig v. Ocean City Ass'n,* 41 *N.J.Eq.* 606, 7 *A.* 491], clearly set apart the disputed territory to a restricted use which, by necessary implication, inured to the benefit

of purchasers of lots with reference to that map. The contrast between purchasing lots with specific reference to that filed map, and purchasing with specific reference to a filed map which negatived any suggestion touching restricted use, is apparent, since the claim of implied covenant in the present case must be based upon the sign on a distant part of the tract containing the words, 'Exclusive Locations' and the added words, 'Convenient, Reasonable and Attractive,' and so far as that sign and parol representations may be thought to impose upon the tract an implied covenant for a restricted use, such implied covenant would necessarily be raised in direct conflict with the terms of the conveyance which was with reference to the unrestricted filed map to which it referred." So, in the present case any covenant to be raised by implication from the representations made would necessarily be "in direct conflict with the terms of the conveyance which was with reference to the unrestricted filed map to which it referred."

More specifically as to the standing of plaintiffs Carey to prosecute this action the following quotation from the court's opinion in the *Bright* case, *supra,* is appropriate: "And, notwithstanding the insistence of complainants that they purchased home sites in the quadrangular block on the assumption and representation that only detached single-family dwellings would and could be erected on the triangular block, the evidence does not indicate that any of them examined the public records or inquired of the record owner to ascertain the facts." From the evidence here it may fairly be inferred that plaintiffs Carey did not know at the time of their purchase who was the record owner of the Shipley Road parcel. Examination of the public records would have disclosed the identity of the owner from whom the facts could have been ascertained. Moreover, these plaintiffs were charged with notice of the fact that the Shipley Road parcel was zoned C-1. *Sylvester v. Pittsburgh Zoning Bd. of Adjustment,* 398 *Pa.* 216, 157 *A.2d* 174; *Lumund v. Board of Adjustment,* 6 *N.J.Super.* 474, 69 *A.2d* 361, *aff'd.* 4 *N.J.* 577, 73 *A.2d* 545. Plaintiffs' failure to examine the records in these respects in order that they might determine the true facts necessarily leads to the conclusion that they were careless and negligent in relying upon the

representation made by Griffith Company. Since restrictions upon the free use of property are not favored by the law and all doubts are to be resolved against the person seeking to enforce them, the conduct of plaintiffs Carey precludes their right to rely upon the representation made.

There remains for consideration the question as to whether or not defendant's failure to object to the admissibility of parol evidence constituted a waiver. The parol evidence rule is a rule of substantive law and not of evidence. *32A C.J.S. Evidence* § 851, p. 216; *Hull v. Brandywine Fibre Products Co., D.C.Del.,* 121 *F.Supp.* 108 (per Rodney, J). So, even though parol evidence may be admitted without objection, if it falls within the inhibition of the rule it does not, by the weight of authority, acquire probative force. *32A C.J.S. Evidence* § 851, p. 219; 88 *C.J.S. Trial* § 154, p. 301. In the present case defendant's answer to the complaint affirmatively pleaded the Statute of Frauds. It also, in effect, affirmatively pleaded the parol evidence rule. In these circumstances the mere failure to object to the admission of parol evidence does not warrant the court in considering such evidence where it would otherwise be inadmissible.

Since none of the plaintiffs have established their right to the relief sought, defendant's motion to dismiss, which was made at the conclusion of plaintiffs' case and again at the conclusion of all the evidence, is granted.

Order on notice.