108 F.3d 1385
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
MID CENTURY INSURANCE COMPANY, a Calif corp., Plaintiff-Appellant
v.
AMERICAN CENTENNIAL INSURANCE CO., a Delaware corp, Defendant-Appellee
 No. 95-56515.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 5, 1997.
Decided March 17, 1997.
As Amended May 16, 1997.
 
 1
 Before: TROTT AND REINHARDT, Circuit Judges, and BRYAN, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Mid-Century Insurance Co. ("Mid-Century") appeals the district court's grant of summary judgment in favor of American Centennial Insurance Company ("ACIC"). Mid-Century (reinsured) and ACIC (reinsurer) were parties to several reinsurance contracts.[1] Mid-Century contends that extrinsic evidence is necessary to show that a Commutation and Release Agreement ("commutation")[2] between the parties related only to two treaties[3] and their renewals, and did not include facultative certificates[4] between Truck Insurance Exchange ("Truck"), a subsidiary of Mid-Century, and ACIC. Mid-Century also argues that it justifiably relied on misrepresentations by ACIC, and that it is entitled to rescission of the commutation. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 STANDARD OF REVIEW
 
 4
 A grant of summary judgment is reviewed de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). Our review is governed by the same standard used by the trial court under Fed.R.Civ.P. 56(c). Suitum v. Tahoe Regional Planning Agency, 80 F.3d 359, 361 (9th Cir.1996), cert. granted, 117 S.Ct. 293 (1996). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Bagdadi, 84 F.3d at 1197. We must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. Abdul-Jabar v. General Motors Corp., 85 F.3d 407, 410 (9th Cir.1996). When a mixed question of fact and law involves undisputed underlying facts, summary judgment may be appropriate. Han v. Mobil Oil Corp., 73 F.3d 872, 874 (9th Cir.1995). Summary judgment is not proper, however, if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995).
 
 
 5
 Because the district court had diversity jurisdiction, we apply Delaware substantive law, as the Delaware Supreme Court would apply it. See, e.g., Intel Corp. v. Hartford Acc. & Indem. Co., 952 F.2d 1551, 1556 (9th Cir.1991).
 
 DISCUSSION
 
 6
 1. Is the Agreement Plain and Clear on its Face?
 
 
 7
 Several terms of the commutation agreement are at issue. In pertinent part, the language of the commutation is as follows:
 
 
 8
 COMMUTATION AND RELEASE AGREEMENT ("Commutation") entered into between AMERICAN CENTENNIAL INSURANCE COMPANY on behalf of itself and its affiliates, parents and subsidiaries ("REINSURER"), and MID-CENTURY INSURANCE COMPANY on behalf of itself and its affiliates, parents and subsidiaries("REINSURED"), effective the sixth day of October 1989.
 
 
 9
 WHEREAS, the REINSURER entered into numerous reinsurance agreements with the REINSURED, whereby REINSURER, in consideration of payment of premium, was committed to reinsure certain risks insured by REINSURED (the "Agreements");
 
 
 10
 WHEREAS, the REINSURER and REINSURED desire fully and finally to settle and commute all rights, obligations and liabilities, known and unknown, of the REINSURER and REINSURED under the Agreements;
 
 
 11
 ............................................................
 
 
 12
 ....................
 
 
 13
 * * *
 
 
 14
 NOW, THEREFORE, IT IS AGREED BY AND BETWEEN THE REINSURER AND REINSURED THAT:
 
 
 15
 * * *
 
 
 16
 3. If and when the payment of ... has been fully made by the REINSURER, the REINSURED shall release and discharge the REINSURER, its predecessors, parents, affiliates, subsidiaries, agents, officers, director, shareholders, successors and assigns from any and all present and future payment obligations, adjustments, executions, offsets, actions, causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, claims, demands, liabilities and/or losses whatsoever, all whether known or unknown, which the REINSURED, and their successors and assigns, ever had, now have, or hereafter may have, whether grounded in law or in equity, in contract or in tort, against the REINSURER or any of them by reason of any matter whatsoever arising out of the agreements, it being the intention of the parties that this release operate as a full and final settlement of the REINSURER'S past, current and future liabilities to the REINSURED under said Agreements.
 
 
 17
 * * *
 
 
 18
 6. The parties hereto expressly warrant and represent that they are corporations in good standing in their respective places of domicile; that the execution of this Commutation is fully authorized by each of them; that the person or persons executing this Commutation have the necessary and appropriate authority to do so; that there are no pending agreements, transactions, or negotiations to which any of them are a party that would render this Commutation or any part thereof void, voidable, or unenforceable; and that no authorization, consent or approval of any government entity is required to make this Commutation valid and binding upon them; and that none of the claims being paid or settled under this Commutation have been previously assigned or transferred to any other person or entity.
 
 
 19
 * * *
 
 
 20
 10. This Commutation contains the entire agreement between the parties as respects its subject matter. All discussions and agreements previously entertained between the parties concerning the subject matter of the Commutation are merged into this Commutation. This Commutation may not be modified or amended, nor any of its provisions waived, except by an instrument in writing, signed by both parties hereunder.
 
 
 21
 Under Delaware law, the intentions of the parties "must be ascertained from the language of the contract." Citadel Holding Corp. v. Roven, 603 A.2d 818, 822 (1992) (citations omitted). Therefore, the language of the contract must be the starting point for our analysis. Id. "A contract must be construed as a whole, giving effect to all of its provisions and avoiding a construction which would render any of those provisions illusory or meaningless." Seabreak Homeowners Ass'n Inc. v. Gresser, 517 A.2d 263, 269 (Del.Ch.1986) (citations omitted). Further, the "meaning which arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such inference runs counter to the agreement's overall scheme or plan." E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co., 498 A.2d 1108, 1113 (Del.1985) (citations omitted). See also Playtex FP, Inc. v. Columbia Casualty Co., 622 A.2d 1074 (Del.1992). In City Investing Co. v. Liquidating Trust v. Continental Casualty Co., 624 A.2d 1191, 1198 (Del.1993), the court considered whether the term "any liabilities" contained certain exceptions. The court held that
 
 
 22
 the language of an agreement, like that of a statute, is not rendered ambiguous simply because the parties in litigation differ concerning its meaning.... For City Trust now to seek to read into that language an unarticulated reservation concerning claims which would be barred two years hence under Section 278, a provision not mentioned in the Trust Agreement, is imaginative but does violence to the clear meaning of the language selected.
 
 
 23
 624 A.2d at 1198 (citations omitted).
 
 
 24
 Mid-Century argues that the phrase "on behalf of" in the first clause of the agreement means only those agreements that Mid-Century had a role in controlling, and that the Truck certificates were necessarily excluded because Mid-Century had no role in those agreements between ACIC and Truck. Mid-Century also contends that if the parties had intended a global settlement of all treaties and facultative certificates, the commutation agreement would have used the word "and" instead of "on behalf of." These arguments are belied by both the four corners of the agreement and the facts of the case. Mr. Allison, vice-president of Mid-Century and a signatory to the commutation, testified that his office included Truck. Truck is clearly a subsidiary of Mid-Century, as set forth in Mid-Century's annual statement. There is no significant difference between the word "and" and the phrase "on behalf of," as those terms are used here.
 
 
 25
 Mid-Century next argues that the phrase "numerous agreements" do not mean "all agreements" and that the parties obviously intended to include only the treaties, which were the primary subject of discussion during the negotiations. The question here is not how many agreements there are between the parties but whether the term "numerous" means all of the agreements. When this word is considered in context of the entire agreement, it means all agreements. See, for example, the third introductory clause "WHEREAS, the REINSURER and REINSURED desire fully and finally to settle and commute all rights, obligations and liabilities, known and unknown ..."; Paragraph 2 "REINSURED shall accept the sum ... in full and final settlement of any and all amounts due by REINSURER to REINSURED on the Agreements;" Paragraph 3, quoted supra. The same language of Paragraph 3 appears in Paragraph 4 as between the Reinsurer and the Reinsured. Paragraph 6 sets forth terms invalidating any other agreements which would make the commutation void or voidable. Paragraph 10 states that the commutation is the entire agreement between the parties and all discussions are merged into the commutation.
 
 
 26
 Certainly, if the parties intended to separate the Truck certificates from this agreement, they should have said so. The commutation is plain and clear on its face. The parties intended that it is a global settlement of all agreements between them. To hold otherwise does violence to the clear meaning of the language in the commutation. City Investing, 624 A.2d at 1198. Extrinsic evidence is not necessary to come to this conclusion. The findings and conclusions of the district court on this issue is affirmed.
 
 
 27
 2. Whether the Appellant Justifiably Relied on the Appellee's Alleged Misrepresentations?
 
 
 28
 Mid-Century argues that, during negotiations, ACIC led Mid-Century to believe that ACIC only wanted to commute the amounts due under the treaties, and that Mid-Century justifiably relied these statements. Mid-Century relies on London v. Guberman, 29 Cal.Rptr. 279 (1963). There, the seller of an advertising business submitted to the buyer a statement containing a clearly false figure regarding gross receipts and profit. The court upheld judgment for the plaintiff buyer, concluding that the representations were false, misleading and known to be false by the seller, made for the purpose of inducing the buyer to complete the transaction. Id.
 
 
 29
 Mid-Century's reliance is misplaced. The London case is clearly factually distinguishable from the instant case. Here, there is no showing that ACIC made any clearly false or misleading statements. Rather, the instant case is factually more similar to that of Carey v. Shellburne, Inc., 215 A.2d 450 (Del.Ch.1965), aff'd, 224 A.2d 400 (Del.1966). In Carey, plaintiff homeowners sued the defendant developer for using adjoining land for commercial purposes. During the negotiations for purchase of the plaintiff's home, their real estate broker represented that the adjoining plot would not be used for commercial enterprises. Examination of public records would, however, have disclosed that the agent was in error. 215 A.2d at 456. The trial court held
 
 
 30
 Plaintiffs' failure to examine the records in these respects in order that they might determine the true facts necessarily leads to the conclusion that they were careless and negligent in relying upon the representation made by [the real estate agent].
 
 
 31
 Id. On affirming the trial court, the Delaware Supreme Court noted that the agent's representations were "parol evidence" that should not be used to vary the plain terms of the plaintiffs' deeds. 224 A.2d at 402.
 
 
 32
 Here, Mid-Century did nothing to determine the precise extent of its reinsurance business with ACIC, even though that information was readily available. Therefore, Mid-Century cannot show reliance on any misrepresentations by ACIC. The district court is affirmed on this issue.
 
 
 33
 3. Whether the Appellant was Entitled to Rescind the Commutation?
 
 
 34
 In Delaware, the elements to a cause of action for rescission are: "(1) the enforcement of the agreement would be unconscionable; (2) the mistake relates to the substance of the consideration; (3) the mistake occurred regardless of the exercise of ordinary care; and (4) it is possible to place the other party in the status quo. In the Matter of Enstar Corp., 604 A.2d 404, 411 (Del.1992) (citations omitted). See also Ryan v. Weiner, 610 A.2d 1377, 1384 (Del.1992). As to the first element of unconscionability, the Delaware Supreme court stated in Tulowitzke v. Atlantic Richfield Co., 396 A.2d 956, 960 (Del.1978).
 
 
 35
 there must be an absence of meaningful choice and contract terms unreasonably favorable to one of the parties. Superior bargaining power alone without the element of unreasonableness does not permit a finding of unconscionability or unfairness. The traditional test is this: a contract is unconscionable if it is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other.' ... 'It is generally held that the unconscionability test involves the question of whether the provision amounts to the taking of an unfair advantage by one party over the other.' (citations omitted).
 
 
 36
 See also Ryan v. Weiner, 610 A.2d at 1382.
 
 
 37
 Mid-Century argues that the issue of unconscionability cannot be determined as a matter of law. Mid-Century contends that the losses alone show that enforcement of the agreement is unconscionable. There is no showing, however, that there was a lack of meaningful choice between the parties or that ACIC took unfair advantage of Mid-Century. Nor is there any showing that Mid-Century exercised ordinary care. Therefore, the district court's grant of summary judgment in favor of ACIC is affirmed.
 
 CONCLUSION
 
 38
 The district court's grant of summary judgment in favor of ACIC is affirmed.
 
 
 39
 AFFIRMED.
 
 
 
 *
 Honorable Robert J. Bryan, United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Reinsurance contracts are contracts of indemnity and operate to shift a part of a risk of loss under an insurance policy from the original insurer to a reinsurer. The insured remains in privity with the original insurer, and the reinsurer owes no duty to the insured. Prudential v. Superior Court (Garamendi), 842 P.2d 48, 52 (Cal.1992)
 
 
 [2]
 Commutation is a conversion of a right to receive variable or periodical payment into the right to receive a fixed or gross payment. Black's Law Dictionary, 281 (6th ed. 1990)
 
 
 [3]
 Most reinsurance contracts are held under a treaty, which covers the reinsured's risk for an entire class of policies. Prudential, 842 P.2d at 52
 
 
 [4]
 Reinsurance is facultative "if it covers the reinsured's risk on an individual policy." Prudential, Id